## CIRCLE S PRODUCTS CO. v. POWELL PRODUCTS, Inc., et al.

### No. 9780.

United States Court of Appeals
Seventh Circuit.
May 13, 1949.

W. A. Snow and Casper W. Ooms, both of Chicago, Ill., for appellants.

Robert C. Comstock and James R. Mc-Knight, both of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, KERNER, Circuit Judge, and LINDLEY, District Judge.

MAJOR, Chief Judge.

Plaintiff is a partnership doing business in Chicago, and has since November, 1947, manufactured and sold photographic lampholders under the trademark Multee-Flood. Defendant Powell Products, Inc. is an Illinois corporation also doing business in Chicago, and since prior to August, 1947, has been engaged in manufacturing and selling photographic lampholders under the trademark Powelite. The defendant Herman Powell is the president of and a stockholder in the defendant corporation, which is the owner by assignment of United States Design Patent No. 148,806, issued to H. T. Lorenz February 24, 1948, upon an application filed January 8, 1947. It is around this patent that the instant suit revolves.

The action was instituted by the plaintiff for a declaratory judgment that the design patent was invalid, that there was no infringement on the part of the plaintiff and that the defendants were liable for unfair competition. The court made findings of facts, entered its conclusions of law and decided all issues in favor of the plaintiff. From its judgment of October 29, 1948, this appeal comes.

The patentee in conformity with the statute on design patents, 35 U.S.C.A. § 73, states that he has invented "a new, original and ornamental design for a photographic lampholder," and by figures shows and describes such design. The plaintiff raises the question that the design patent was not the invention of Lorenz, the patentee, but of the defendant Powell. It is stated in defendants' brief, "The mechanical features of the Powelite are without question, the invention of Mr. Powell, but the ornamental and artistic outer appearance of the Powelite, that is, the lines, impressions, configurations and the like, taken as a whole, which make an impression through the eye upon the mind of the observer, is the design, invented by Mr. Lorenz," and we are also informed by defendants' brief not only that Powell is the inventor of the mechanical features of the device but that they are "the subject matter of an application for mechanical patent filed in the United States Patent Office, Serial No. 662,750, dated April 17, 1946." Thus, we have a situation wherein the mechanical structure, including all of its elements, was conceived by Powell, which information was imparted to Lorenz for the purpose of constructing the device according to the disclosure of Powell, and when such construction was completed by Lorenz he claimed and was awarded the patent in suit on the design of the constructed apparatus.

The relevant testimony on this feature of the case is confined mostly to that of defendant Powell and the witness Kaufmann who worked for Lorenz. The patentee Lorenz was not a witness. The defendant Powell testified, "Well, it was the end of 1945 or some part of '46 where I conceived of an idea to make it easier for the rank amateurs to take pictures indoors." Powell also testified that he made a sketch of his invention and that "Basically, it was the same as the figure on this patent paper [referring to Fig. 2 of the patent in suit]." It is true that Powell when later called as a witness retracted to some extent what appears to be an almost fatal admission. Kaufmann testified that he talked with Powell toward the end of 1945 and that Powell "went into detail and explained

about a unit that would have the lights mounted on it, and where you can mount a camera, and it would have a handle where it is made portable for use by a photo user." The witness testified that Powell made a sketch "to show indication where the electric bulbs would go, approximately where to mount the camera so you could get the proper holding unit." The testimony of Powell also discloses that the device suggested by him was changed in some respects by Lorenz, chiefly because of the material situation due to the war.

Much stress is placed upon the testimony of Kaufmann that "Mr. Lorenz hit on the idea of making it in a channel with fixed sockets." If there be any invention on the part of Lorenz, it must reside in the conception of this "idea," but even if this change constitute a patentable improvement, it was directed solely at the mechanics of the device, that is, its utility rather than its design. Moreover, the change was the result of an acute material situation occasioned by the war rather than by any attempt to improve the device, mechanically or otherwise.

We think we need neither discuss nor refer to the prior art patents and publications referred to in the court's findings because we think the patent is invalid either with or without such prior art and irrespective of whether the design was the conception of Powell or Lorenz. The lower court found:

"The photographic lamp holder shown and described in design patent 148,806 is a mechanical device for providing illumination for photography and its shape and configuration are dictated by mechanical and functional requirements rather than those of design."

■ This finding, if accepted, as we think it must be, negatives any basis for a patentable invention. It has been held that a design patent cannot properly be obtained on the shape of a device which necessarily results from its mechanical parts. In the instant case, the defendants' device consists of a number of mechanical parts for operating light bulbs. The shape of the device is that resulting from the assembly of those component mechanical parts. A statement pertinent to the instant situation

was made in Applied Arts Corporation v. Grand Rapids Metalcraft Corporation, 6 Cir., 67 F.2d 428, at page 430, wherein the court in discussing the design before it stated:

"In the main its configuration is made imperative by the elements which it combines and by the utilitarian purpose of the device. It was certainly not the intent of the law to grant monopoly to purely conventional design which is in itself little more than a necessary response to the purpose of the article designed."

Nor do we find any reason to disagree with the lower court in its view that the design is not ornamental, as that term is used in the patent law. It is shaped like the letter "T," with a long body member and a short handle set at a right angle to the center of the body member. It has no unusual shape or configuration. It is without decoration and its shape results from its mechanical construction. A reading of the testimony is convincing that both Powell and Lorenz were interested only in the mechanical and utilitarian features of the device. It was not the design with which they were concerned and it seems to us that whatever was achieved as to the latter was wholly incidental to the construction of a useful device.

■ Defendants also rely upon commercial success and cases which have held or intimated that in the case of design patents it is "a test of patentability." The commercial success which they claim for their product we think is of little, if any, benefit in the instant matter. As was pointed out in Bayley & Sons, Inc. v. Standart Art Glass Co., et al., 2 Cir., 249 F. 478, in response to a similar argument, there is nothing in the record to show what portion of the asserted success was due to the mechanical or utility features of the device and what, if any, was attributable to the design.

■ Inasmuch as we agree with the lower court that the patent is invalid, we think there is no occasion to discuss or decide the issue of infringement. A more troublesome question arises from the court's decision in favor of the plaintiff upon the issue of unfair competition. Relevant to this issue, the court found:

"5. Prior to February 24, 1948, defendants threatened and warned plaintiff's customers and prospective customers that they would be sued for patent infringement if they sold plaintiff's Multee-Flood devices, and among the customers and prospective customers so threatened and warned were Marshall Field and Co., Central Camera Company, Conway Camera Company and Hornstein Photo Sales of Chicago, Illinois and Camera Specialties Company of New York, New York.

"6. The warnings, notices and threats of patent infringement made to plaintiff's customers and prospective customers prior to February 24, 1948 were not made in good faith because defendants owned no patent or design patent and had no right to make such threats and as a result of defendants' threats of patent infringement, plaintiff lost sales of its photographic lamp holders and had merchandise returned, to its loss and damage.

"7. On February 10, 1948, prior to the issuance of design patent 148,806, plaintiff received from defendants' attorneys a notice of patent infringement enclosing a purported injunction, which injunction did not relate to the design or to plaintiff.

"8. On February 17, 1948, defendants sent a notice in writing to all of their dealers throughout the country that the Patent Office was issuing 'a patent on the Powelite', that 'suitable steps will be taken to eliminate any and all lights which are on the market today and which infringe upon this Powelite patent', and that defendants' attorneys would 'file an injunction suit in the United States District Court against a Chicago manufacturer'."

These findings, in our judgment, furnish ample support for the conclusion that the defendants were guilty of unfair competition. Really, the only question open here is whether the findings are substantially supported. No good purpose could be served in a narration or discussion of the testimony relied upon by the plaintiff in support of the findings. It is sufficient that we have read the testimony, both oral and documentary, and while it is not too impressive in some respects, yet we think it is sufficient to support the findings and require their acceptance by a reviewing court.

The judgment appealed from is Affirmed.