HOPKINS v. WACO PRODUCTS, Inc. et al.

ALAN'S SALES ENGINEERS, Inc. v. HOPKINS.

Nos. 50 C 48, 50 C 987.

United States District Court
N. D. Illinois, E. D.

Oct. 23, 1952.

886

Ralph M. Snyder, Chicago, Ill., for Earl F. Hopkins.

Mayer Goldberg, Goldberg & Levin, Dugald S. McDougall, Dawson & Ooms, Chicago, Ill., for Waco Products, Inc. and another.

Leo Klein, Chicago, Ill., for Alan's Sales Engineers, Inc.

CAMPBELL, District Judge.

Each of these consolidated cases involves the validity of a design patent. No. 50 C 48 is a suit for infringement of the patent, to which plaintiff has joined "related" claims for unfair competition and violation of the Illinois Fair Trade Act, Ill.Rev.Stat. 1951, c. 121½, § 188 et seq. No. 50 C 987 is a suit to declare the patent invalid. A trial was had, and both cases were taken under advisement by the court.

I

The following facts have been established, either by the testimony of witnesses, or through the introduction of written exhibits:

1. Waco Products, Inc., has, since 1945, manufactured and sold various items of tubular steel furniture.

2. In 1945, and previously thereto, Hopkins was employed by Waco on a part-time basis. His duties at first consisted of "expediting war work," and, at a later date, of selling various items manufactured by Waco. During this period of part-time employment by Waco, Hopkins' main occupation was that of hotel manager.

3. Some time in 1945, Hopkins created a design for a baggage rack, to be used in hotel rooms. This baggage rack, which Hopkins later advertised as a "Deluxe Wall-guard Chrome Luggage Stand," is a folding metal rack with crossed legs. There is a bar protruding from alongside one edge, so that luggage placed upon the rack cannot mar the furniture or walls of a hotel room. The legs of the rack are bent inward at the tips, so that they meet the floor at right angles, thus preventing damage to rugs.

4. In the latter part of 1945, at Hopkins' request, Waco began to manufacture said baggage rack. Waco continued manufacturing the baggage racks and, until the early part of 1949, sold them exclusively through Hopkins. In 1949, a disagreement arose between Hopkins and Waco, and Hopkins terminated his agency relationship with Waco.

5. On April 23, 1947, Hopkins filed an application with the United States Patent Office, asking that he be granted letters patent for a "new, original and ornamental design for a baggage rack," as described above. Hopkins' claim was rejected in November, 1948. An amended application by Hopkins was similarly rejected in February, 1949. After further correspondence between Hopkins and the Patent Office, the Office withdrew its rejections and decided to issue the letters patent to Hopkins. Design Patent 156,008, covering the baggage rack described above, was issued to Hopkins on November 15, 1949.

6. Prior to the issuance of the Hopkins Patent, the following letters patent had been issued:

(a) Rubin Design Patent 140,740, issued April 3, 1945. This patent covered an ornamental design for a wheeled tray. Like the Hopkins baggage rack, the Rubin tray consisted of a flat metal rack upon which objects might be rested. It too had crossed metal legs, and could be folded for storage. One pair of legs protruded upward across the edge of the top of the tray, so that a protective bar substantially similar to that in the Hopkins design was effected. Unlike the Hopkins Baggage rack, the Rubin tray had a wheel at the end of each of its legs.

(b) Leschnik Patent 1,179,944, issued April 18, 1916. This patent covers a folding chair. The chair has two pairs of legs, one of which is designed to protrude upward, forming a back to the chair. Like the Hopkins baggage rack, the tip of each leg of the Leschnik chair is bent inward, so that it meets the floor at a right angle.

(c) Strobel Design Patent 37,149, issued September 20, 1904. This patent covers an ornamental design for a folding chair. The chair has two pair of crossed legs, one of which is curved upward over the seat of the chair, forming a back. The tips of the legs are bent inward, meeting the floor at right angles. The lines of the Strobel design are sweeping and simple. If the back of the Strobel chair were lowered, the chair would appear substantially the same as the Hopkins design for a baggage rack.

7. Hopkins' advertisements of his baggage rack, and his testimony at the trial, demonstrate that the dominant features of the Hopkins baggage rack were designed to prevent damage to hotel rooms. Thus, the "wall-guard" was designed to prevent luggage from damaging walls, and the curved tips of the legs were designed to prevent damage to floor coverings.

## II

■ The statute covering design patents provides that "Any person who has invented any new, original, and ornamental design for an article of manufacture, not known or used by others in this country before his invention thereof * * * may * * * obtain a patent therefor." 35 U.S.C.A. § 73. In order for a design to be patentable, "it must be the product of invention, by which is meant that conception of the design must demand some exceptional talent beyond the skill of the ordinary designer." Associated Plastics Companies v. Gits Molding Corp., 7 Cir., 1950, 182 F.2d 1000, 1004.

The design of the Hopkins baggage rack is not the "product of invention"; each of its features was patented before. The Rubin, Leschnik, and Strobel patents demonstrate that, if anything, Hopkins originated a new combination of old designs. And the more credible evidence adduced at the trial shows that this combination was motivated primarily by functional requirements, and was therefore not patentable. Hueter v. Compco Corporation, 7 Cir., 1950, 179 F.2d 416.

■ Because Hopkins' design of a baggage rack was not new and original, and because it was dictated by functional requirements, the Hopkins Design Patent 156,008 must be and is hereby declared invalid.

## III

■ Hopkins, who is plaintiff in the suit for patent infringement, contends that Waco Products, Inc. and its president, Troccoli, engaged in unfair competitive practices, and violated the Illinois Fair Trade Act. Waco and Troccoli urge that this court is without jurisdiction to rule upon these nonfederal claims. Since there is no diversity of citizenship between the parties, jurisdiction, if any, would be based upon 28 U.S.C.A. § 1338(b), which provides:

"The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trademark laws."

This statute codifies the body of law which emanated from Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. In that case, the Supreme Court held that once

a district court has assumed jurisdiction of a suit arising under the copyright laws, the court acquires and retains jurisdiction of nonfederal claims, such as unfair competition, which are based upon the same set of facts as the copyright suit. The limits of the rule were marked out by the Court in this manner, 289 U.S. at page 246, 53 S.Ct. at page 589:

> "The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal ground; in the latter it may not do so upon the nonfederal cause of action."

The Court in Hurn v. Oursler noted that in that case, "the claims of infringement and unfair competition so precisely rest upon identical facts as to be little more than the equivalent of different epithets to characterize the same group of circumstances", and concluded that the district court should have retained jurisdiction of the unfair competition claim despite an absence of diverse citizenship between the parties.

■ If, in the instant case, the claim for unfair competition and the claim for patent infringement were based upon the same set of facts, the invalidity of the patent would not deprive this court of its power to dispose of the claim for unfair competition. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195. Clearly, however, the two claims do not rest upon the same set of facts.

In reviewing the mass of testimony and exhibits which were adduced at the trial, it becomes evident that the federal and nonfederal claims are each bottomed upon a separate and distinct body of evidence. Hopkins attempted to establish the alleged violation of the Illinois Fair Trade Act by introducing into evidence a letter allegedly written by Troccoli on behalf of Waco Products, Inc. This letter was written before the issuance of the Hopkins design patent, and it has no bearing whatever on the validity or the alleged infringement of the patent, which are the only federal questions in suit. Most of the alleged unfair competitive practices took place before the Hopkins patent was issued, and none of said practices relates directly to Hopkins' federal claim.

The court therefore concludes that the federal and nonfederal claims are not "related" within the meaning of that term in 28 U.S.C.A. § 1338(b), and that it is therefore without jurisdiction to dispose of the claim for violation of the Illinois Fair Trade Act, and the claim for unfair competition, brought by Hopkins against Troccoli and Waco Products, Inc. Said claims are hereby dismissed on the court's own motion.

In No. 50 C 48, insofar as the suit for patent infringement is concerned, judgment is hereby entered in favor of defendants.

In No. 50 C 987, for the reasons stated in this memorandum, judgment on defendant's counterclaim is hereby entered in favor of plaintiff.