### HOPKINS v. WACO PRODUCTS, Inc. ALAN'S SALES ENGINEERS v. HOPKINS.

#### No. 10780.

United States Court of Appeals
Seventh Circuit.

June 23, 1953.

George H. Wallace, Charles B. Cannon, and Wallace & Cannon, all of Chicago, Ill., for appellant.

Mayer Goldberg, Dugald S. McDougall, and Leo Klein, all of Chicago, Ill., Joseph Minsky, Chicago, Ill., of counsel, for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

Hopkins, doing business as Lake City Products, brought an action against Waco Products, Inc. (hereinafter called Waco) for infringement of his design patent D-156,008. Alan's Sales Engineers, Inc., in a separate suit against Hopkins, sought a declaratory judgment that design patent D-156,008 was invalid for lack of invention. The two actions were consolidated and tried together. The district court found the patent invalid. Hopkins had also alleged unfair competition and violation of the Illinois State Fair Trade Act, S.H.A.Ill. ch. 121½, § 188 et seq., but these claims were dismissed for lack of federal jurisdiction and are not before us on appeal. The only issue here is the validity of plaintiff's design patent.

Design patent D-156,008 covers a folding baggage rack with crossed legs, largely used in hotels. Except for four straps made of heavy woven fabric, the rack is constructed almost entirely of tubular steel. The principal parts are two inverted U-shaped members, the sides of one of which, being more widely separated, form the outer legs of the rack, and are pivotally connected to the sides of the other U-shaped member, which thus become the inner legs thereof. A smaller tubular rod connects the two pivotal joints. About 3 inches to 4 inches from the ends of the legs of the rack, the metal tubes are bent inwardly so that the bottoms of the legs rest flatly on the floor when the rack is in an open position.

The upper end of the larger U-shaped member, because of an extension from the sides of that member, extends higher from the floor and farther from the center of the rack than the upper end of the smaller U-shaped member, creating a wall guard. At each side of this member, at the level of the "platform," the tube extends in a curve rearwardly about 4 inches, and then curves upwardly about 4 inches, and rounds into the cross member, that is, the upper end of the larger U-shaped member. The "wall guard" thus consists of the portion extending rearwardly 4 inches from the sides of the larger U-shaped member, then upwardly 4 inches, and also the upper end of the "U" which joins the two sides—all of which is part of the tube making up the whole of the larger U-shaped member. Where the sides extend rearwardly as above described, a horizontal bar or tube is attached crosswise, this being at a level with the upper end of the smaller U-shaped member and parallel to it. Four straps, parallel to each other, extend from this bar to the upper end of the smaller U-shaped member, and the bar, the upper end of the smaller U-shaped member, and the straps thus create a platform for luggage when the rack is in the open position. Because the straps are flexible, the rack may be collapsed in a position where one U-shaped member is placed immediately adjacent to the other U-shaped member, the straps being folded between them. When collapsed and not in use the rack may be stored in a relatively small space.

Since the two U-shaped members are each made from one long tube bent in the fashion described, and there are no sharp joints, the various curves of the rack are

graceful and sweeping. Finished in chrome the appearance of the rack is pleasing to the eye. Many of the best known hotels in the country purchased these luggage racks from plaintiff, who advertised them as "de luxe wall-guard chrome baggage stands."

Hopkins had years of experience as a hotel manager. He testified that on many occasions he went into nicely decorated hotel rooms and found the walls marred and furniture damaged because of careless handling of baggage. He conceived the idea that a different type luggage stand was needed. In 1945 he was on terms of personal friendship with Frank Troccoli, the president of Waco, which at that time was fabricating and selling a line of bar stools, chairs, and chrome furniture, in which tubular metal was used. Troccoli instructed Tom Kolar, his plant engineer, to work with Hopkins on the project of a luggage rack with a wall guard. Hopkins testified that he told Kolar that he desired to work out a streamlined luggage stand with a wall protector bar extending about 3 inches further back than in the conventional type stand, and also about 3 inches higher. A model was prepared, and the first commercial delivery was made in September, 1946.

Waco manufactured the baggage racks for Hopkins during 1947 and 1948, charging a fixed price. In the early part of 1949 Waco suggested that Hopkins pay a higher price for the racks and Hopkins then made arrangements to have them manufactured elsewhere. There was no written agreement between Hopkins and Waco at any time as to the manufacture of the racks, unless Troccoli's letter of May 1, 1947, hereinafter discussed, was a contract, as Hopkins contends. Waco continued to sell the luggage racks with the wall protector feature to others, being of the same design, appearance and utility as had been manufactured for Hopkins.

On April 23, 1947, Hopkins applied for a design patent which was issued on November 15, 1949. In his correspondence with the Patent Office, during the prosecution of the patent, Hopkins argued that the balance of the inward curve of the bottom of the legs against the upward curve of the back or wall guard constituted the dominant element of his design. He pointed out that one curve complemented the other.

Title 35, U.S.C.A., § 73[1], provides that "Any person who has invented any new, original, and ornamental design for an article of manufacture, not known or used by others in this country before his invention thereof, * * * may * * * obtain a patent therefor."

Such a patent must disclose a design that is original, ornamental and inventive in character. Hueter v. Compco Corp., 7 Cir., 179 F.2d 416; Capex Co. v. Schwartz, 7 Cir., 166 F.2d 5; Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 133 F.2d 266. A mechanical patent must disclose inventive novelty and utility—a design patent inventive originality in design and ornamentation. Capex Co. v. Schwartz, supra. Mere mechanical skill, whether of the artisan or the artist, is insufficient. Battery Patents Corp. v. Chicago Cycle Supply Co., 7 Cir., 111 F.2d 861. This court in S. Dresner & Son, Inc. v. Doppelt, 120 F.2d 50, 52, quoted with approval from Nat. Lewis Purses, Inc. v. Carole Bags, Inc., 2 Cir., 83 F.2d 475, that invention in design patents means the same exceptional talent that is required for a mechanical patent, so the fact the design may be " 'new and pleasing enough to catch the trade' " alone is not sufficient. The factor of inventive originality in design and ornamentation must be present.

A design dictated by mechanical or functional requirements is not patentable. Circle S Products Co. v. Powell Products, Inc., 7 Cir., 174 F.2d 562; Smith v. Dental Products Co., Inc., 7 Cir., 140 F.2d 140. However, "It is well established that the mere fact that a design sought to be patented may involve some mechanical or utilitarian function does not render it unpatentable, but the 'invention must relate to

[1]. The provisions of the revised patent law relating to patents for designs, 35 U.S. C.A. § 171, are inapplicable because the judgment here involved was entered prior to the date of the revised law. Act July 19, 1952, § 4(e), preceding 35 U.S.C.A. § 1.

the design, and be distinguishable from the mechanical function involved.' In re La Montagne, 55 F.2d 486, 488, 19 C.C.Pa., Patents, 880." In re Barber, 81 F.2d 231, 232, 23 C.C.Pa. Patents, 834.

■ An earlier luggage rack manufactured by Waco was similar to the design of the rack in suit except that it had no wall protector bar or guard. This addition to the old type of rack was largely functional, and it was primarily on that functional basis that Hopkins promoted its sale. True the bar was gracefully curved, but this shape also rested on practical considerations, because it was established that the steel tubing used could not be sharply bent without endangering its structural strength.

The asserted balance of the inside curve of the lower part of the legs against the upward curve of the wall guard which Hopkins stressed in his communication to the Patent Office is shown in Leschnik patent No. 1,179,944 covering a folding chair. The curve in the legs, so that the ends thereof would rest flatly on the floor, had been previously used by Waco on various types of tubular metal furniture.

The trial court relied on Rubin design patent No. 140,740 and Strobel design patent No. 37,149, as prior art disclosing designs very similar to those incorporated in Hopkins' baggage rack. The Rubin design covtered a wheeled tray. It had crossed metal legs and could be folded for storage. One pair of legs protruded upward above the level of the tray so that a protective bar substantially similar to that in the Hopkins design was effected. In the Strobel design covering a chair, there were two pair of crossed legs, one pair of which curved upward over the seat of the chair forming a back. The tips of the legs were curved inwardly so that the ends thereof rested flatly on the floor.

The district court found that the dominant feature of Hopkins' baggage rack was its design to prevent damage to hotel rooms, stating, "Thus, the 'wall-guard' was designed to prevent luggage from damaging walls, and the curved tips of the legs were designed to prevent damage to floor coverings." [107 F.Supp. 887.] We cannot say that this finding is clearly erroneous. Indeed some of the testimony given by Hopkins himself as well as advertisements which he placed in different magazines gives support to the district court's finding.

The findings of the trial court that Hopkins' design was not new or original, and that it also lacked invention are not clearly erroneous, and must be sustained. The same holds true for the finding that the design was dictated by functional requirements.

■ Hopkins argues that the commercial success of his baggage rack should induce this court to sustain the patent. We could not do so in view of the clear proof of invalidity. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235. In any event there is no showing that the commercial success was due to the design as opposed to the utility of the device. We may well repeat here what we said in Circle S Products Co. v. Powell Products, Inc., 7 Cir., 174 F.2d 562, 564: "Defendants also rely upon commercial success and cases which have held or intimated that in the case of design patents it is 'a test of patentability.' The commercial success which they claim for their product we think is of little, if any, benefit in the instant matter. As was pointed out in Bayley & Sons, Inc., v. Standart Art Glass Co., et al., 2 Cir., 249 F. 478, in response to a similar argument, there is nothing in the record to show what portion of the asserted success was due to the mechanical or utility features of the device and what, if any, was attributable to the design."

■ Finally Hopkins asserts that Waco is estopped to deny the validity of his design patent by reason of a letter written by Frank Troccoli, president of Waco, on May 1, 1947. We would be justified in ignoring this point as it was not argued in the district court. Suffice it to say, we have examined same. The letter recites no consideration and none was suggested by the evidence. Hopkins was free at any time to do exactly what he did in 1949, and that was to have the baggage racks manufactured by someone other than Waco. The letter does not establish a contract or create an estoppel. Judgment

Affirmed.