**BURGER TRAIN SYSTEMS, INC., Plaintiff-Appellant, Cross-Appellee,**

v.

**John BALLARD d/b/a Ballard's Dairy Queen, Defendant-Appellee, Cross-Appellant.**

**Nos. 75–1690 and 75–1691.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 30, 1976.

Decided April 6, 1977.

As Amended on Denial of Rehearing April 28, 1977.

Robert B. Smith, Bloodworth, Smith & Biscone, Oklahoma City, Okl., for plaintiff-appellant, cross-appellee.

Jerry J. Dunlap, Dunlap, Codding & McCarthy, Oklahoma City, Okl., for defendant-appellee, cross-appellant.

Before HOLLOWAY, McWILLIAMS and DOYLE, Circuit Judges.

PER CURIAM.

In this patent case the plaintiff-appellant seeks a partial reversal of the judgment of the district court. Specifically it seeks reinstatement of a jury award on one of two claims which it had made. The jury awarded $15,000 damages on each of plaintiff's claims. However, the trial court set aside one of the jury verdicts on defendant's motion for judgment n. o. v.

The allegation of the complaint was that Burger Train Systems, Inc. was the owner

of two patents, the first being a design patent for a drive-in restaurant, U.S. Letters Patent No. 211,010, and the second being a process or utility patent, U.S. Letters Patent No. 3,363,723. Defendant was the operator of a drive-in Dairy Queen restaurant. The process patent covered a movable carrier or cart which transported food from inside a drive-in restaurant to cars parked on the outside. Burger Train, Inc. had obtained both of the patents from the patentee by assignment.

Plaintiff-appellant had sought from the trial court an adjudication of infringement of both patents plus a permanent injunction enjoining Ballard from infringing and an award of money damages for the alleged infringements. Ballard's position was that the patents were invalid and that he had not infringed in any event. He further alleged that the patents were misused and thereby were unenforceable.

Following a jury trial on the issues thus presented, verdicts were returned in favor of plaintiff-appellant for the infringement of the two patents. Two $15,000 jury verdicts were returned. Defendant moved for judgment notwithstanding the verdict or a new trial. The motions were denied as far as the award for infringement of the utility or process patent was concerned. The motion was granted as to the award for infringement of the design patent. It is this latter action of the trial court which has caused Burger Train, Inc. to appeal to this court and seek reversal. Ballard has cross-appealed from the judgment with respect to the infringement of the utility patent.

## I.

The design patent was issued in 1968 to a man named Cunningham. It disclosed a roughly circular building having scalloped roofs. It also had a superstructure in the center-top of the building with a pole extending vertically from the superstructure together with a ball on top of the pole. It shows a number of tracks extending from the building to a car parking area in the shape of spokes of a wheel. Ballard's building also was roughly circular with a scal-loped roof and with tracks extending from it as in the form of spokes of a wheel. It did not, however, have a superstructure in the center-top with a pole extending vertically from the superstructure and a ball on top of the pole.

The utility patent was also issued to Cunningham in 1968. The application filed in the Patent Office for a drive-in restaurant food serving system contained nine claims. Each of the last eight claims was dependent upon and referred to claim 1 which read:

> In a drive-in restaurant system having a food preparation area defined by a surrounding wall, a food dispensing station remote from said preparation area, and a two-way communication system interconnecting the food preparation area with the food dispensing station, wherein the improvement comprises: track means extending between said food preparation area and said food dispensing station, said wall having a door opening surrounding the track means; a carrier means movable along the track means; means for moving said carrier means; and door means opening and closing the door opening in said wall by the movement of said carrier means therethrough.

It was thus a system for transporting food from the preparation area within the building through a door, opening and closing in the wall of the building, to food dispensing areas where automobiles were parked. This transportation was accomplished by means of a carrier device moving along tracks.

The examiner in the Patent Office refused to approve the original claim 1 and the eight claims dependent upon it. Evidence at the trial showed that the examiner cited prior art in two earlier patents and suggested to the patent applicant's agent that claim 1 be revised by incorporating in it the specific descriptions of the track means, carrier means and door means contained, respectively, in original claims 2, 3 and 4. The patentee accepted the suggestion and so the substituted claim 1 which received approval consisted essentially of original claims 1 through 4.

Claim 1, as approved, described the track means as comprising "a pair of substantially U-shaped channel members having the legs thereof projecting horizontally toward each other and connected in spaced-apart parallel relation forming an upwardly open coextensive groove; and an angle member connected to the upper outer edge portion of each said channel member." The carrier means "comprises a horizontally disposed rectangular platform, a pair of axles transversely connected to said platform, a wheel journaled by the respective end of said axles and supported by said angle members, a food shielding hood mounted on said platform, and an inverted substantially U-shaped bow overlying said hood, said bow having its leg portions connected to the respective end portions of said platforms." The third element, the door means, has "a pair of window sashes interconnected at one end portion in A-shaped relation, a hinge joining the apex formed by said window sashes to the upper limit of the wall opening for horizontal pivoting movement of the window sashes toward and away from the plane of the wall opening." The remaining five claims in the original application (claims 5–9) depend upon claim 1 as approved.

The Ballard structure operates in a manner similar to the patented system. His drive-in restaurant food distribution system includes a track extending from inside the building through an opening in the building's wall to serving stations outside where customers are parked in their automobiles. Food travels in a carrier along the track. The carrier passes through a door opening in the wall to the customer.

One difference between Ballard's system and that of the patented device is that the Ballard track is a single iron channel with legs extending upward, whereas in the patented device the track consists of a pair of substantially U-shaped channel members with legs projecting horizontally toward each other and connected in space-apart parallel relation forming an upwardly open coextensive groove. There is also an angle member connected to the upper outer edge

portion of the channel members in the patented device that is not present in Ballard's device. Thus, the track in Ballard's system is a simpler structure than the one in the patented device.

The carrier means in the Ballard system is supported as it moves along the track on rollers or wheels. Included in the rollers are circular flanges at their outer edges which extend along the outer edge of the channel irons (tracks). The flanges prevent the rollers and in turn the carrier from slipping from the track. In the patented device there are wheels that are journaled by the ends of the axles and are supported by angle members, elements not present in the Ballard device.

The carrier means in the Ballard system consists of a platform that includes a covering that shields the food. It does not include the inverted, substantially U-shaped bow that overlies the food covering or hood in the patented system.

Finally, the door means in the two systems differ. That used by Ballard consists of two physically separated doors that are hinged at their upper edges to the top surface of the door opening. The two doors are horizontally separated by a distance which provides sufficient clearance for the carrier device as it passes through them on the track. The two doors are interconnected by a linkage system so that when one door is raised to allow the carrier to pass, the other door will be lowered. Thus, the door device ensures that outside elements do not penetrate the opening in the wall of the building. Each door also has a roller device on it which contacts the hood of the carrier as the latter approaches in order to cause the doors to be raised and lowered by the movement of the carrier through the opening in the wall.

The door means in the patented device consists of a pair of window sashes interconnected at the top-end in A-shaped relation. A hinge joins the apex formed by the two window sashes to the upper surface of the door opening in order to allow the window sashes to pivot as the carrier hood comes into contact with a cushioning device

attached to the window sash that is in the closed (vertical) position. As the movement of the carrier forces that window sash to rotate upward the trailing window sash rotates downward to the closed position by virtue of the interconnected A-shaped relation of the sashes.

The window sashes or doors in the Ballard system are not connected in an A-shaped relation as in the patented device. As noted, at the top of the Ballard door structure, the sashes or doors are horizontally separated. A further difference is that the Ballard system includes two separate hinges upon which the doors rotate. On the other hand, the patented device has a single hinge that operates at the apex of the connected window sashes.

## II.

On this appeal plaintiff-appellant would have us reverse that part of the judgment of the district court which involved vacating the jury verdict on the design patent infringement claim and dismissal of the claim. Accordingly, we must now consider whether the court erred in setting aside this verdict.

■ In examining the validity of the court's action, we must view the evidence, including inferences to be drawn from the basic evidence, in a light most favorable to the party opposing the motion. The motion for judgment n. o. v. is not to be granted unless all of the evidence points one way and is not susceptible to any reasonable inferences which sustain the position of the party against whom the motion is directed. *See Moore v. Shultz,* 491 F.2d 294, 298 (10th Cir. 1974). If, of course, the evidence and inferences examined in this way are such that reasonable persons may reach different conclusions, the granting of the motion n. o. v. is not permissible.

■ Another rule involved here is that applicable to design patent infringement. The test set down by the Supreme Court in this area is found in *Gorham Mfg. Co. v. White,* 81 U.S. (14 Wall.) 511, 526, 20 L.Ed. 731 (1871). The Court said that the design patent is infringed by another design if, in

the eye of an ordinary observer who gives the degree of attention a person ordinarily gives, the two designs are substantially the same, and if the resemblance is such as to deceive an ordinary purchaser so as to induce him to purchase one thinking it to be another. *See Blumcraft of Pittsburgh v. U. S.,* 372 F.2d 1014, 1016, 178 Ct.Cl. 798 (1967).

■ The issue of patent infringement is generally factual in nature. *See McCullough Tool Co. v. Well Survey, Inc.,* 343 F.2d 381, 401 (10th Cir. 1965). This is true of both design patent and utility patent infringement. *See Schnadig Corp. v. Gaines Mfg. Co., Inc.,* 494 F.2d 383, 391 (6th Cir. 1974).

Here the jury found that Ballard's building infringed the plaintiff's design patent. In vacating this award the court determined that the primary reason that the design patent was granted was that it included the superstructure in the center of the roof as well as the standard and ball extending from that superstructure. In the absence of the superstructure, standard and ball, the court considered that there was nothing novel about the plaintiff's design which could distinguish it from prior art. Since the evidence showed that the defendant's building did not include the superstructure, standard and ball, the only aspect which gave the design distinction and made it patentable, no infringement of the design patent resulted.

The pertinent statutory definition is contained in 35 U.S.C. Section 171, which states that: "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."

In issuing the design patent for the drive-in restaurant building, three earlier reference patents which had employed the scalloped roof design were cited. Also cited were three earlier design illustrations in issues of the periodical, *Architectural Record.*

Defendant's expert witness, Mr. Fidler, testified as to the design revealed in two of the earlier patents cited by the Patent Of-

fice as well as in one of the illustrations found in the mentioned periodical. He called attention to the fact that each of the earlier designs included the scalloped roof similar to that revealed in the plaintiff's patent. He stated his conclusion that the single ornamental design feature shown in the plaintiff's patent which was different from those shown in the cited prior art was the prismatic superstructure, the pole (standard) and the ball on top of it. On cross-examination Fidler stated that he did not regard differences between the plaintiff's design and those shown in prior art in structures below the roof-line to be substantial because those structures related to functional requirements and were not necessarily part of the design.

The trial court's judgment is such as to indicate that it accepted Mr. Fidler's testimony as to the difference between plaintiff's patented design and prior art, for it determined that the difference, that is the superstructure, pole and ball, was the only distinguishing feature capable of forming the basis for patentability. In view of this the court concluded that inasmuch as the defendant's building did not have the superstructure, pole and ball, there was no infringement as a matter of law.

But Burger Train maintains that the judgment thus given was erroneous because the question of infringement is essentially a question of fact which is not subject to being set aside as a matter of law; the question of the validity of the patent having been decided affirmatively by the jury, the finding of the jury as to the patentability of plaintiff's design was not subject to being scuttled, so to speak, at the hands of the court.

■■■ We disagree. In our view the trial court's judgment n. o. v. is not at variance with the jury's affirmative finding as to the validity of the patent. The trial court did not determine that the design patent was invalid. It merely ruled that the superstructure, the pole and ball were the only items which could have justified the issuance of the patent. Since the accused structure (defendant's building) used

none of these, there could be no infringement. Moreover, there was no specific finding of the jury that other features of the plaintiff's design were properly patentable. Accordingly, the judge's ruling was a ruling of law. We do not see the verdict as a resolution of a factual dispute. In sum, then, the court's ruling is consistent with the evidence.

Practically none of the testimony was to the effect that features of the plaintiff's design other than the superstructure, pole and ball were patentable. As to the scalloped roof in the plaintiff's design, the evidence was uncontroverted from witness Fidler that the scalloped roofs in the prior art were similar to the roofs in the plaintiff's design. Thus, the jury would not have been warranted in finding contrary to this. As to other parts of the structure such as the plaintiff's roof over the parking spaces and the understructures such as the tracks for the serving system and the call boxes, these are functional and not subject to a design patent. *See Hopkins v. Waco Products, Inc.,* 205 F.2d 221, 223 (7th Cir. 1953). *See also Sunbeam Lighting Co. v. Pacific Associated Lighting Inc.,* 328 F.2d 300, 301 (9th Cir. 1964). The roof extension was added not as part of the design, but rather to protect automobiles and the tracks from the rain. The understructures were simply components of the serving system.

■■■ We are cognizant that for the existence of patentability there must be a new, original and ornamental design and that the existence of such is in the province of the trier of the facts. We recognized this in *Moore v. Shultz, supra.* However, where as here it can be determined that the only feature which renders the design patentable is not on the allegedly infringing device, the question is not a dispute of fact; rather, it becomes a question of law.

*Ziegler v. Phillips Petroleum Co.,* 483 F.2d 858 (5th Cir. 1973), *cert. denied,* 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1974), is in accord. The decision in that case was that the question of infringement is a factual one, whereby the district court's findings are to be reviewed by use of a clearly

erroneous standard. The Fifth Circuit said that the district court must first, however, construe the patent and that this is a question of law. Where such construction is necessary, the question of infringement is not a question of fact. *Id.* at 867.

In our view, then, the trial court acted properly in construing the patent and in determining the aspect of it which justified its being patentable. Having done so, and having determined that there was no issue of fact as to the part of the structure which was patentable, it properly set aside the verdict.

### III.

Ballard has filed a cross-appeal in which he argues that the determination by the jury upheld by the trial court that he infringed the utility patent is erroneous because the doctrine of file wrapper estoppel precludes the patentee's reliance on the doctrine of equivalents in seeking to capture features which have been given up before the examiner. He points particularly to the broad claims as to "track means," "carrier means," and "door means" as the features which were waived during the prosecution of the Burger Train patent.

He further argues that the Ballard device does not embody many of the features found in the patent application as the same was approved and he asserts that file wrapper estoppel prevents Burger Train from invoking the doctrine of equivalents as a means of holding Ballard liable.

The famous Supreme Court decision in *Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct. 684, 702, 15 L.Ed.2d 545 (1966), contains an exposition of the rule of file wrapper estoppel:

It is, of course, well settled that an invention is construed not only in light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office. . . . Claims as allowed must be read and interpreted with reference to rejected ones and to the state of the prior art; and claims that have been narrowed in order to obtain the issuance of a patent by distinguishing

the prior art cannot be sustained to cover that which was previously eliminated from the patent. (Citations omitted.)

Our court in *McCullough Tool Co. v. Well Survey, Inc.,* 343 F.2d 381, 403 (1965), also expressed the file wrapper estoppel doctrine in the same terms when it said: "a patentee may not expand his allowed claims by interpretation to embrace features which he disclaimed in order to overcome objections by the Patent Office on the basis of prior art disclosures."

■ In a good many infringement cases the doctrine of file wrapper estoppel is at odds with the doctrine of equivalents. This latter doctrine requires that the accused structure employ each of the essential elements of the patent claim or its equivalent. *See Graver Tank & Mfg. Co. v. Linde Air Products,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Under this doctrine the questioned element is equivalent if it does the same work in substantially the same way so as to accomplish substantially the same result. *See McCullough Tool Co., supra,* at 401.

There is no assertion by Ballard that his device does not contain elements constituting equivalents to those found in the patented system. Indeed his expert witness, Fidler, acknowledged that the elements of the Ballard system performed substantially the same functions considered from the standpoint of the performance of the individual elements of the patented system. Ballard argues, however, that infringement is impossible because the plaintiff is estopped from asserting claims other than those embraced in the specific elements of the approved patent claims. He maintains that the undisputed evidence is that there is a lack of identity between the elements of the Ballard system and the elements of the system for which a patent was issued.

■ We disagree with Ballard's contention that the file wrapper estoppel doctrine does not tolerate the use of the doctrine of equivalents; that it absolutely precludes it. As we view it, it only precludes recapturing what has been waived in the application process. *See Ziegler, supra,* at 870. Ac-

cordingly, the issue is whether the patent holder gave up the features or elements which characterized the accused structure. This determination is to be made from an examination of Patent Office proceedings including the prior art cited by the examiner. *See John Deere Co., supra,* at 32–5, 86 S.Ct. 684; *Exhibit Supply Co. v. Ace Patents Corp.,* 315 U.S. 126, 136, 62 S.Ct. 513, 86 L.Ed. 736 (1942); *Ziegler, supra,* at 877; *Lewis v. Avco Mfg. Corp.,* 228 F.2d 919, 927–28 (1956).

In the present case the original claims of the patent applicant were narrowed in the light of prior art which was suggested by the examiner. However, there was no formal amendment. It was brought about by combining claims 1–4 as a single claim 1 in the patent which was issued. By so doing the specific means contained in original claims 2–4 including track means, carrier means and door means became part of the patent as a modified claim 1.

One of the prior art patents is the Delucchi Patent, No. 2,405,294. This was discussed by expert witness Fidler. It covered a conveyor system from the central serving area on the second floor of a restaurant to the dispensing station at ground level. At this dispensing station there is a two-way microphone. The customer removes a food tray from the conveyor system by pulling open the door.

Fidler made a comparison and gave his opinion that the Delucchi Patent contains a track system consisting of a pair of rails and wheels having flanges. He found the wheels and flanges to be identical with those used in the defendant's device. He did not find the rails to be the same. Fidler's testimony also included a comparison of the Purdy Patent, No. 2,649,930 (1953), which disclosed a conveyor system having a pair of parallel rails with a cart or conveyor on the rails. The cart is moved back and forth by a wire attached to the cart and by a motor placed at one end of it. There is a telescoped box on the inside of the cart which can be opened when a customer takes food out. Fidler compares the wire on the Purdy device as corresponding to a wire

employed on the defendant's device. He acknowledges that the motor on the plaintiff's patented system is in the center position as opposed to the end of the cart in the Purdy device.

The patents compared by Fidler employ some but not all of the elements in the patent at bar. In the prior art patents there are parallel rails and wheels and a cart which operates on the rails together with a motor. There is not, however, anything comparable to the door means which is employed here. This consists of connected window sashes in an A-shaped relation rotating on a hinge. It is fundamental to the patent of the plaintiff-appellant. There was no prior art referenced in the proceedings before the Patent Office which required the patent holder to relinquish any aspect of the mechanically opening door element.

■■■■■■ The effect of the proceedings before the Patent Office was to consolidate claims 1–4 into single claim 1. Thus it ruled out patenting of the individual means. At the same time, a result of the consolidation was a combination patent containing the several means. The effect of the consolidation, then, was not to bring into play the doctrine of file wrapper estoppel. The individual elements were not eliminated directly or impliedly. Since such an action as was here taken by the Patent Office does not bar the use of the doctrine of equivalents, we conclude that it was permissible for the court to submit the doctrine of equivalents to the jury and for the jury to reach a verdict based on such an evaluation. From the testimony of Fidler it could be inferred that the various means employed by Ballard were substantially equivalent to the corresponding means in the patent in suit. But as we view it Fidler was contending that the patent in suit was anticipated by the Delucchi and the Purdy Patents, and thus the thrust of his testimony was that the Burger Train Patent was invalid. He did not support the theory urged here that the doctrine of equivalents was out.

In sum, the evidence justified submission of the doctrine of equivalents to the jury

and the court was not required to vacate this verdict.

Accordingly, the judgment of the district court should be and the same is hereby affirmed.