**James F. BARNETT, Appellant,**

v.

**LIFE INSURANCE COMPANY OF THE SOUTHWEST, Appellee.**

**Nos. 76–1367 and 76–1518.**

United States Court of Appeals,
Tenth Circuit.

Argued & Submitted May 18, 1977.

Decided Aug. 18, 1977.

Rehearing Denied Oct. 18, 1977.

Ben T. Lampkin, Jr., and Larry A. Tawwater, Lampkin, Wolfe, Burger, McCaffrey & Norman, Oklahoma City, Okl., for appellant.

George W. Dahnke, Hastie, Kirschner & Brown, Oklahoma City, Okl., for appellee.

Before SETH and HOLLOWAY, Circuit Judges, and CHILSON, Senior District Judge *.

SETH, Circuit Judge.

This suit was tried as an action for fraud based on an application for conversion of a policy brought against the defendant, Life Insurance Company of the Southwest, by one of its former selling agents. The plaintiff had been an agent for defendant for some eleven years, and had worked for its parent company before that.

The complaint sought compensatory and punitive damages. The case was tried to a jury, defendant moved for a directed verdict which was denied, the case was submitted and the jury awarded plaintiff compensatory damages, and also punitive damages. The punitive damages were in the amount of two million dollars, and the compensatory damages $3,500.74. The trial judge granted judgment for the defendant n. o. v. on punitive damages immediately after the verdict was received. A judgment n. o. v. was entered later as to compensatory damages.

The jury returned a verdict on March 15th and the court on March 16th entered judgment for the defendant on the issue of punitive damages which had been the subject of various motions and rulings before trial. The court indicated, as it had done before, that plaintiff's case was very weak, but said it would not then take action on the compensatory damage portion of the verdict. On March 16th the plaintiff filed a notice of appeal. Within the permitted time from verdict the defendant filed a motion for judgment n. o. v. as to the

* Of the District of Colorado, Sitting by Designation.

compensatory damages portion of the verdict, and, in the alternative, for a new trial. The trial court asked for briefs on the issue and the parties responded. The plaintiff in his presentation urged that the trial court had lost jurisdiction by reason of the notice of appeal plaintiff had filed on March 16th. The trial court granted judgment n. o. v.

The plaintiff also urges on this appeal that the trial court did not have jurisdiction to consider the judgment n. o. v. as to compensatory damages. It is apparent from the record that the trial court had not completed its consideration of the jury verdict at the time appellant's first notice of appeal was filed. The matter thus was not final, and the notice of appeal filed in an attempt to prevent further consideration of the verdict by the trial court was not effective. Thus the usual rule as to the effect of a notice of appeal of a final judgment was not applicable. Plaintiff filed a second notice of appeal from the court's order of April 28th.

We will consider the appeal as having been taken from both aspects of the case, and both orders of the trial court to be valid.

The trial court on this motion for judgment n. o. v. by the defendant should have examined the evidence in a light most favorable to the plaintiff, together with the reasonable inferences to be drawn from the facts. The standard to be used by the trial courts is essentially the same as applied for directed verdicts. *See Oldenburg v. Clark*, 489 F.2d 839 (10th Cir.); *Taylor v. National Trailer Convoy, Inc.*, 433 F.2d 569 (10th Cir.); Rule 50(b), Fed.R.Civ.P., and the general common law practice. In *Taylor v. National Trailer Convoy, Inc.*, we held that judgment n. o. v. is proper where ". . . the evidence and all the inferences to be drawn therefrom are so patent that minds of reasonable men could not differ as to the conclusions to be drawn therefrom." We said in *Symons v. Mueller Co.*, 493 F.2d 972 (10th Cir.):

". . . A scintilla of evidence is insufficient, of course, to justify submission of a case to the jury. Nevertheless, a directed verdict or judgment n. o. v. may not be granted unless the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made. *Swearngin v. Sears Roebuck & Co.*, 376 F.2d 637, 639 (10th Cir. 1967)."

And in *C. H. Codding & Sons v. Armour & Co.*, 404 F.2d 1 (10th Cir.):

"The rule for the granting of a directed verdict has been often repeated. Its essence requires that before a motion for a directed verdict shall be sustained the evidence must be 'all one way or so overwhelmingly preponderant in favor of the movant that the trial court in the exercise of its sound discretion would be required to set the verdict aside.' *Chicago, Rock Island and Pacific R. R. v. Howell*, 10th Cir., 401 F.2d 752 . . ."

*See also Neely v. Martin K. Eby Construction Co.*, 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 affirming 344 F.2d 482 (10th Cir.).

The federal standards applicable in this Circuit as indicated above provide the procedural framework and standards for consideration of the motions while the law of Oklahoma provides the substantive measure. There is no issue of credibility of witnesses present.

The record shows that plaintiff had a life policy with the company which contained certain rights to convert the term coverage portion into a 30-pay life policy. The plaintiff certified that he sought to so convert and also to add an additional benefit of accidental death or double indemnity. He submitted an application to accomplish this change and the addition, which he testified had check marks in the squares for double indemnity and waiver of premiums. This application was handed by plaintiff to a Mr. Phillips, a company vice president from the home office, who happened to be then visiting at the local office out of which plaintiff worked. There was a conflict in the testimony as to whether plaintiff was then asked by Mr. Phillips to answer all of a

series of questions on the form or only one such question. These questions related to insurability, and it was established that answers were ordinarily required when additional coverage was requested. In any event, these questions were not answered on the application form. The application was also not completed in that the names of the beneficiaries had not been entered. These names were inserted on plaintiff's request by telephone by a secretary in the home office after the application was taken there by Mr. Phillips. Plaintiff testified that he submitted a check for additional premium for the double indemnity coverage to Mr. Phillips with the application for conversion.

As the application was processed at the home office, the check mark on the box for double indemnity had been covered over with liquid paper. The box for waiver of premiums had also been covered the same way, but had been rechecked. The "whiting-out" changes were conspicuous.

The application was given by plaintiff to Mr. Phillips on March 5th, and apparently taken by him to the home office on his return. The entire company file was introduced, and it shows that the processing of the application from the outset, on March 11th, began as a conversion without double indemnity. Thus, it was handled as an ordinary conversion of right under the terms of the original policy. The procedure of conversion continued as such to conclusion with the mailing of a new policy to the plaintiff. There was no indication in the company records or in the testimony that any other coverage had ever been considered or commenced at the home office.

The plaintiff on March 22d, early in the morning, was very seriously injured in an automobile accident. He alleges, in substance, that the fraud took place by the elimination of the double indemnity portion of his application for conversion after his accident, and because of the very serious nature of his injury.

■ We must affirm the trial judge in his granting of judgment for defendant n. o. v. as to both punitive damages and com-pensatory damages. There was clearly insufficient evidence to submit the issue of fraud to the jury. This conclusion is, of course, arrived at after an application of Rule 50(b) standards and an examination of the Oklahoma authorities pertaining to actions for fraud.

The application of plaintiff to convert his policy had been altered in that liquid paper had been used to cover the check mark which would have requested double indemnity coverage to be added upon the conversion. There was no evidence as to when or where the change had been made. Plaintiff testified he did not make the change.

The evidence is clear that it was a prerequisite to the addition of coverage such as double indemnity to have a series of questions answered on the application. These were not answered, and the testimony was that the additional coverage could not have been issued for that reason. The plaintiff testified that he submitted a check for the added coverage with the application, but he could not produce the paid check, nor a stub nor any record pertaining to the check.

The testimony shows that coverage for double indemnity would have been automatically and fully reinsured with another company, and defendant would not have carried the double indemnity risk in any event. Thus there was no reason why it would have been of any consequence to the company whether the coverage was added or not.

As above indicated, the evidence shows that the processing at the home office started on March 11th as an ordinary conversion with no additions, and so proceeded to conclusion without change. The policy was "issued" on March 20th, and was mailed to plaintiff on March 22d. There was no evidence to show knowledge by the home office of plaintiff's accident until after the policy was mailed.

The policy was received by plaintiff, but he was then still in the hospital. He testified that in August or September, he realized that there was no double indemnity coverage, but he says he made no mention

of this to the home office for some six weeks after that. The officers of the defendant testified that no complaint at all was made until this suit was started. Plaintiff made no request of defendant for such coverage at any time after he discovered the omission.

There was no showing of any damage to plaintiff because he produced no proof that he was uninsurable for such a risk at time of trial. The witnesses he produced on this issue did not testify that plaintiff was not insurable; instead they indicated that such issue had not been reached by the companies they represented. Thus there was no proof that plaintiff had in any way suffered from the failure to include the double indemnity coverage on conversion of his policy.

Plaintiff thus failed entirely to produce evidence on several of the essential elements of fraud, and thus the judgment n. o. v. was proper.

■ There are several pertinent Oklahoma decisions as to the elements of fraud and what is required by way of proof to submit a fraud case to the jury.

The Oklahoma court in *Tyler v. Hartford Accident & Indemnity Co.*, 195 Okl. 523, 159 P.2d 722, and in *Weston v. Acme Tool, Inc.*, Okl., 441 P.2d 959, held that if there is a choice in drawing inferences from the facts, the court should not choose an imputation of fraud. The Oklahoma court in *Tyler v. Hartford Accident & Indemnity Co.*, 195 Okl. 523, 159 P.2d 722, said:

> "Fraud is never presumed, but must be proved by clear and satisfactory evidence, and, when a transaction is fairly susceptible of two constructions, one which will free it from imputation of fraud will be adopted. (Citing cases)."

Also the Oklahoma court has held that there must be proof of specific intent to sustain a verdict. *Jones v. Jones*, Okl., 290 P.2d 757. The court there again said in the proof of fraud, the evidence must be ". . . clear, satisfactory, and convincing . . . ." In *Johnson v. Caldwell*, 180 Okl. 470, 71 P.2d 620, the Oklahoma court

stated that a fraud case should not go to the jury ". . . unless facts are produced from which an irresistible deduction of fraud reasonably arises." The court also there said that fraud could not be "presumed" by a jury from the circumstances. Thus the standard of proof is high, and when these authorities are applied to this case, it is clear that the plaintiff's proof did not meet the standard to permit the case to be submitted to the jury.

AFFIRMED.