GENERAL WHOLESALE BEER COMPANY et al., Plaintiffs-Appellants,

v.

THEODORE HAMM COMPANY, Defendant-Appellee.

No. 76–1805.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1978.

Rehearing Denied March 13, 1978.

F. Carlton King, Jr., Howard O. Hunter, Philip S. Coe, Atlanta, Ga., for plaintiffs-appellants.

Richard R. Cheatham, Thomas H. Edwards, Atlanta, Ga., for defendant-appellee.

Before BROWN, Chief Judge, THORNBERRY and MORGAN, Circuit Judges.

PER CURIAM:

This diversity case from the Northern District of Georgia comes to us on appeal from a directed verdict granted to defendant-appellee after presentation of appellants' case. Because there are issues of fact remaining for the jury we therefore reverse and remand on both the contract count and the fraud count for further proceedings.

The appellants [1] are interconnected corporations doing business as beer distributors

---

1. General Wholesale Beer Company, General Wholesale Company, Valley Distributing Corporation, and Suburban Distributing Company of Florida.

in Georgia and Florida. Appellee and appellee's predecessor were brewers of beer. In May, 1973, standard form wholesale sales agreements were executed by appellants (exception Suburban) and appellee's predecessor. Later in 1973, appellee acquired the Hamms trademark. The relationship between brewer and wholesaler remained virtually unchanged with the substitution of appellee and deliveries were made in conformance to the previously executed sales agreements.

During 1974, as a result of expansion negotiations, appellants General Wholesale and Suburban were expanded and formed respectively. In early March, however, beer shipments to appellants unaccountably stopped. On March 12, 1975 appellants received a letter from Olympia Brewing Company informing them that Olympia had purchased the Hamms business and trademark and, that henceforth no further shipments would be made to appellants.

Appellants filed suit alleging breach of contract with respect to the wholesale sales agreements and fraud in the inducement of the creation of Suburban and expansion of General Wholesale. After plaintiffs' evidence, the district court granted defendants' motion for a directed verdict.

■ The standard for determination of the validity of a motion for a directed verdict was set forth in *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1971). In *Boeing* the court stated:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is

substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

411 F.2d at 374. The standard is the same on appeal as before the lower court. *Alman Brothers Farm Feed Mill, Inc. v. Diamond Laboratories, Inc.,* 437 F.2d 1295 (5th Cir. 1971).

■ Appellants contend that the trial court erred in directing a verdict on the contract count because the terms of the contract are so ambiguous with respect to the scope of the agreement's termination provisions that reasonable minds may differ, and therefore, a question of fact exists for the jury. Generally, the interpretation of a contract is an issue of fact for the jury. *See Zell Ins. Agency v. Guaranty Security Ins. Co.,* 399 F.2d 147 (5th Cir. 1968); *Dobson v. Masonite Corp.,* 359 F.2d 921, 923 (5th Cir. 1966). If the terms of the contract are unambiguous, however, then the interpretation of the terms is solely for the judge. *Barclays Bank D. C. O. v. Mercantile National Bank,* 481 F.2d 1224, 1234 (5th Cir. 1973). Merely because the parties disagree upon the meanings of contract terms will not transform the issue of law into an issue of fact. *Barclays Bank, supra,* at 1234.

■ Thus framed, the issue is whether the contract terms governing termination of the contract are ambiguous therefore necessitating a jury determination. Two contract provisions are involved in this determination. Under the general termination provision, termination for cause is effective immediately upon notice. One of the "causes" listed is the "withdrawal by Brewer of the Product from the state." The same provision, however, requires thirty day notice preceding termination if the termination is not for cause. A second provision permits the Brewer to modify or eliminate its product without notice. Appellant argues that the sale of assets was not a withdrawal of the product from the

state and hence thirty days notice should have been given. Appellee, in contrast, contends that the sale of assets was either a withdrawal or an elimination of the product.

It is evident to us that the terms of this agreement governing requirements for termination are sufficiently ambiguous to allow the jury to determine which provision the parties intended to govern the effect of a sale of assets on contractual obligations. Appellee's reliance on two separate contract provisions belies their position that the contract is unambiguous. Although appellee contends that both withdrawal for cause and the elimination provisions apply, appellee fails to consider that the two provisions have peculiar procedural requirements. One requires notice and the other does not. Yet, apparently from appellee's argument, the two provisions would be coterminous. Because we assume that parties intend that every provision has a particular purpose, however, we, therefore, construe provisions in order to give effect to each provision. Because of the different notice requirements, it is a minimum question of fact, which of the two provisions the parties intended to be applicable. Additionally, because a decision to sell assets is essentially different from the market decision to stop distribution in a given area, we also hold that it is a jury question whether, under the contract, a sale of assets was with or without cause. We therefore reverse on the contract count.

We also reverse the fraud count. There was evidence that the jury could infer a fraudulent intent on the part of appellee to induce the expansion of General Wholesale and the creation of Suburban. Additionally, the execution of a wholesale agreement with General Wholesale on the same day that the sale of assets to Olympia was culminated was evidence from which the jury could infer an intent not to perform in the future. *See Hayes v. Hallmark Apts.*, 232 Ga. 307, 207 S.E.2d 197 (1974). We therefore reverse the fraud count, but only as to appellants General Wholesale and Suburban because they only have demonstrable injury.

Reversed and remanded in part, affirmed in part.