**John MATTHEWS, Plaintiff-Appellee,**

v.

**ERNST RUSS STEAMSHIP COMPANY and M/V TILLY RUSS, etc., Defendants-Appellants.**

No. 78–2547.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1979.

Decided Aug. 20, 1979.

Rehearing and Rehearing En Banc Denied Sept. 18, 1979.

---

Joseph Keig, Jr., Chicago, Ill., for defendants-appellants.

Ernest T. Rossiello, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT and CUMMINGS, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

This diversity suit was brought by a longshoreman seeking $450,000 for an injury he incurred in unloading cargo from defendant Motor Vessel TILLY RUSS owned by co-defendant Ernst Russ Steamship Company. According to the complaint, on December 4, 1976, plaintiff was working aboard the TILLY RUSS when it was moored at Navy Pier in Chicago. He alleged that when he was descending from a container on a ladder it gave way under his weight so that he was thrown eight feet to the lower deck of hatch 3, permanently fracturing his right foot's os calsis (heel bone). He charged that the ladder was part of the vessel's equipment and that defendants negligently failed to maintain the rubber heels at the base of the ladder. He claimed that he was exercising ordinary care at the time of the fall. In an amended complaint, plaintiff's wife was added as a co-plaintiff, and the ad damnum was increased to $600,000.

At the close of the evidence, the matter was submitted to the jury not only on the general verdict but also on special interrogatories under Rule 49(b) of the Federal Rules of Civil Procedure. The jury found that (1) defendant steamship company was negligent, (2) its negligence proximately caused plaintiff's injury,[1] (3) plaintiff was not guilty of contributory negligence, and (4) $180,000 would compensate him for his injury. Judgment for plaintiff was entered on the verdict. We affirm.

The evidence credited by the jury showed that on December 4, 1976, the Mid-States Stevedoring Corporation assigned plaintiff and other longshoremen to unload a cargo of containers in the No. 3 hatch of the TILLY RUSS. The vessel was loaded with containers from the floor of the lower hold to the top deck. The longshoremen would unload the containers by stepping from the upper deck to the tops of containers and hooking cables from the Stevedore's shoreside crane to the top of each container. When the longshoremen stepped off a container, the crane operator would lift it out of the ship to the pier. The longshoremen repeated this process with each container, working across and downward from the top to the bottom of the hold, unloading the containers in sequence. In their unloading work, the longshoremen used a ladder supplied by the Stevedore. This ladder was used by the longshoremen to descend from the top of each container after hooking a cable thereon.

When the longshoremen reached the bottom layer of containers in hold 3, there were five present: plaintiff, Orvey Ware, James Green, James Walton and Willie White. Plaintiff and one other longshoreman were on top of a container but the other three had already descended to the floor of the hold. Ware testified that he was in a hurry to get plaintiff and the other longshoreman down from the last two containers, one of which (container B) they had just hooked to cables from the shore-side crane. He noticed a metal ladder in the corner of the ship and placed it against the final container (container A) to be removed so that plaintiff could come down. The Stevedore's ladder was also leaning against that container. (See plaintiff's Exh. 59.) When plaintiff used the second or ship's ladder to descend from container A he and the ladder fell to the bottom deck of hatch 3.[2] The left safety foot was missing from the ladder, the right safety foot was in bad condition, the ladder itself was lopsided, and its right side was bent. The accident occurred at 2:30 p. m. in the absence of any members of the ship's crew. Just before

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. In so finding the jury necessarily rejected defendants' contention that the Stevedore caused the accident by prematurely moving the container from which plaintiff was descending.

2. Defendants contend that it was not established that the second ladder belonged to the ship. However, it clearly did not belong to the Stevedore and there was ample evidence for the jury to conclude that the shipowner was responsible for this ladder.

the accident occurred, Ware and Green had climbed off other containers by using the Stevedore's ladder.

When plaintiff was taken to Northwestern Memorial Hospital, it was discovered that he had suffered a broken os calsis in his right foot. He was not able to return to work until eight months later. While working as a longshoreman on another ship on November 4, 1978, he was killed. A motion for substitution of parties was granted on March 6, 1979.

*Standard of Care Owed by Shipowners to Longshoremen.*

Defendants first argue that a motion for a directed verdict or judgment n. o. v. should have been granted under the so-called majority rule that a shipowner is not liable for injuries caused by a condition known to or open and obvious to a reasonably prudent longshoreman because shipowners need only exercise reasonable care under the circumstances to protect longshoremen against danger. This standard of care was recently adopted in *Santos v. Scindia Steam Navigation Company*, 598 F.2d 480 (9th Cir. 1979). However, this same standard of care was adopted by the district court because it employed defendants' instruction No. 29A providing as follows (Supp. App. 21–22):

"In this case the defendant shipowner had a duty to exercise ordinary care under the circumstances to place the ship on which the stevedoring work was to be done in this instance and the equipment and appliances aboard that ship in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he might reasonably expect to encounter arising from the hazards to ship's service or otherwise, would be able, by the exercise of ordinary care, to unload the cargo in a workmanlike manner and with reasonable safety to persons and property.

"A shipowner also has a duty to give the stevedoring contractor reasonable

warning of the existence of any latent or hidden danger which has not been remedied and is not usually encountered or reasonably to be expected by an expert and experienced stevedoring contractor in the performance of the stevedore work aboard the ship, if the shipowner actually knew, or, in the exercise of ordinary care under the circumstances, should have known of the existence of such danger, and the danger is one which the shipowner should reasonably expect a stevedoring contractor to encounter in the performance of the stevedoring work going on.

"A shipowner is not liable to longshoremen for physical harm caused to them by any activity or conditions on the ship whose danger is known to the longshoremen or obvious to a reasonably careful man."

In view of this instruction, we need not consider whether the shipowner was liable under the so-called minority standard of care rule that a shipowner is not liable to invitees for physical harm caused to them by any activity or condition on the ship whose danger is known or obvious to the invitees unless the shipowner should anticipate the harm despite such knowledge or obviousness.[3] As seen, the minority view was not represented in the standard of care instruction proposed by the defendants and given by the district judge and would not in any event have been helpful to them.

■ Since the jurors found that defendants were liable to plaintiff under the foregoing instruction, they must have found that plaintiff's injuries were not caused by a condition known or obvious to a reasonably careful longshoreman. Also the jury specially found that plaintiff was not contributorily negligent. Accordingly, we cannot accept defendants' argument that there was no liability on the ground that the condition of the ladder was open and obvious.

■ Defendants insist that they were entitled to a judgment notwithstanding the

**3.** The exception contained in this "unless" clause is taken from the Restatement of Torts (2d) § 343A. We have not decided whether this exception is the proper standard, *Clemons*

*v. Mitsui O.S.K. Lines, Ltd.*, 596 F.2d 746, 750 n. 16 (7th Cir. 1979), and need not so decide here.

verdict because a reasonable jury could only have concluded that the danger of using such a defective ladder was open and obvious. In this regard they rely heavily on *Castel v. Moller, A.P.*, 441 F.Supp. 851 (N.D. Cal.1977). That case is distinguishable because there no inference could be drawn that the defective condition of the ladder was attributable to the shipowner rather than to the use of it by the Stevedore's employees. We cannot disturb the verdict here because there was ample evidence that the shipowner was negligent in allowing a defective ladder to be available where the Stevedore's employees were likely to make use of it. Even if the jurors believed that the condition of the ladder was open and obvious to plaintiff's co-employees and therefore that they were negligent in attempting to use it, that would not mitigate the shipowner's negligence. The Supreme Court recently made clear that the shipowner is liable for the consequences of his negligence even if there is concurring negligence by the Stevedore and that the negligent shipowner will be held liable for all damages not due to plaintiff's own negligence. *Edmonds v. Compagnie Générale Transatlantique*, —— U.S. ——, ——, 99 S.Ct. 2753, 61 L.Ed.2d 521.

The evidence of defendants' negligence here distinguishes the present case from *Clemons v. Mitsui O.S.K. Lines, Ltd.*, 596 F.2d 746 (7th Cir. 1979). In *Clemons* we overturned a jury verdict for the plaintiff because there the open and obvious nature of the danger (an open deep tank)—coupled with the facts that it was an expectable hazard on a ship docked for loading and was necessary to accomplish the task—established that it was not negligent for the shipowner to have the deep tanks open. Moreover, it was in accord with custom to leave tanks open when, as there, they were about to be worked. We concluded that insofar as there was evidence that it was negligent to allow the tanks to be open when they were not yet actually being worked, this negligence was not attributable to the shipowner since it had been told by the Stevedore to open the tanks so that they could be worked.

The very different argument in the present case is that even if the shipowner was negligent the responsibility for the accident should be shifted to those who used the ladder despite its open and obvious dangerousness. In view of the jury's finding that the plaintiff was not contributorily negligent and in view of *Edmonds v. Compagnie Générale Transatlantique, supra* (also discussed *infra*), this argument is untenable.

*Any Stevedore's Omission Does not Immunize Defendants.*

■ Defendants also argue that they may not be held liable because the Stevedore had control of the unloading of the ship and was responsible for providing safe ladders.[4] Under *Edmonds v. Compagnie Générale Transatlantique, supra*, and Section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 905(b)), the liability of the ship to a longshoreman depends on a showing of negligence on the part of the shipowner. Here the jury found that defendants were negligent in leaving an unsafe ladder in the hold for possible use by longshoremen. As previously discussed, *Edmonds* makes clear that a longshoreman can recover the total amount of his damages from the vessel if the latter's negligence is a contributing cause of his injury even if the Stevedore was partly to blame as these defendants contend. Therefore, defendants may not escape liability on the ground that the Stevedore was negligent.

*The District Court Properly Refused to Permit the Jury to Give the Shipowner an Equitable Credit for the Negligence of the Stevedore.*

■ Defendants argue that the district court should have instructed the jury to

---

4. It is undisputed that the Stevedore did supply a safe ladder to plaintiff and his co-workers. Defendants seem to suggest that the Stevedore had an obligation to assure that all ladders were blocked or held. They also presented some evidence that supervisory employees of the Stevedore were aware that plaintiff's group was using an unsafe ladder and failed to prevent that use.

reduce any award by the amount of the negligence of the Stevedore. However, *Edmonds v. Compagnie Générale Transatlantique, supra,* holds to the contrary, so that defendants are not entitled to a new trial on this ground.

## *Testimony of So-called Expert Witnesses Was Permissible.*

█ Defendants assert that Judge Leighton committed reversible error by permitting Dr. Bernard Friedman, Dr. Samuel Willens and Thomas Grzesis to testify, even though their names were not disclosed in answers to defendants' interrogatories. This ruling was a fair one since the trial judge noted that counsel had been unable to agree upon a final pre-trial order and since he ruled that the defendants could call their own witnesses to rebut the proffered testimony. Therefore, no prejudice to defendants occurred, and no abuse of discretion has been shown.[5] *Martella v. Great Atlantic & Pacific Tea Co.,* 418 F.2d 1246, 1247 (3d Cir. 1969); *Stewart v. Meyers,* 353 F.2d 691, 695–696 (7th Cir. 1965).

## *The Court's Instructions Were Proper.*

Defendants first attack the court's instruction on causation (Supp. App. 18) which was taken from 3 Devitt and Blackmar, Federal Jury Practice and Instructions (3d ed., 1977) §§ 94.13 and 96.22 and tendered by plaintiff. Defendants admit that this instruction is typically given under the Federal Employers' Liability Act (45 U.S.C. §§ 51–59) and under the Jones Act (46 U.S.C. § 688) in cases involving seamen (Br. 26). Like those statutes, the Longshoremen's and Harbor Workers' Compensation Act of 1977 (33 U.S.C. § 901 *et seq.*) is a remedial statute entitled to liberal construction. The instruction which told the jury that defendants' act or omission could be considered "the cause of injury or damage if the injury or damage would not have happened *but for* the act or omission" (emphasis supplied) was therefore permissible.[6] Even though the defendants also criticize the forepart of this instruction because it permitted the jury to hold defendants liable if their act or omission played any part, no matter how small, or contributed in any way in causing plaintiff his injury, that is a correct statement of the law. As the Supreme Court explained in *Edmonds, supra,* "it is true that the ship will be liable for all of the damages found by the judge or jury; yet its negligence may have been only a minor cause of the injury" (—— U.S. ——, 99 S.Ct. 2761).

█ The defendants also claim that the trial court should have given their two proffered instructions on proximate cause. While we agree that it would have been preferable for the court to have given these instructions, its failure to do so was not reversible error in this case. The trial judge used the expression "proximate cause" throughout his charge and the jury had responded to a special interrogatory that defendants' negligence proximately caused plaintiff's injury.[7] The concept of proximate cause is not so esoteric that it requires a special definition, at least in this case where the causal link between the defective ladder and the injury was so obvious. Also, when plaintiff's counsel pointed out that defense counsel had backed down on their agreement not to oppose the "but for" instruction on cause, the district court ruled that the general subject matter was

---

5. The district judge expressed clearly on the record his judgment that because of an apparent lack of communication and cooperation between counsel in this case, plaintiff's failure to supplement his answers to defendants' interrogatories to include the names of the "expert" witnesses was understandable (Tr. 243).

6. Because the evidence showed that plaintiff's injury was caused by the condition of the ship's ladder, even if there were any error in giving the "but for" instruction on cause instead of the cause instructions suggested by defendants,

it was harmless. *Farnarjian v. American Export Isbrandtsen Lines, Inc.,* 474 F.2d 361, 364 (2d Cir. 1973); *Spinks v. Chevron Oil Company,* 507 F.2d 216, 222–223 (5th Cir. 1975).

7. It should be noted that plaintiff's counsel had no objection to defendants' proffered instructions on proximate cause because defendants' counsel had originally agreed to the "but for" instruction taken from §§ 94.13 and 96.22 of the Devitt and Blackmar set of instructions.

adequately covered by the "but for" instruction and added that the parties were proposing far too many instructions for the jury (Tr. 531–532).

 Next, defendants attack the trial court for giving plaintiff's instruction No. 27 providing as follows (App. 6):

"Before the commencement of stevedoring operations, the owner of a vessel in navigable waters has a duty to take reasonable remedial action with respect to all unreasonably dangerous conditions of which it has actual or constructive knowledge. This duty of the vessel owner to take reasonable remedial action applies to all unreasonably dangerous conditions of chattels including tools and portable equipment which the owners, crew or officers of the vessel know or should reasonably expect the longshoremen to use.

"After the commencement of stevedoring operations, the owner of a vessel in navigable waters has a duty to take reasonable remedial action with respect to all unreasonably dangerous conditions of which it has actual knowledge."

The substance of this charge was given in *Gallardo v. Westfal-Larsen & Co.*, 435 F.Supp. 484, 490 (N.D.Cal.1977), was recently approved in *Santos v. Scindia Steam Navigation Company*, 598 F.2d 480, 487 n. 6 (9th Cir. 1979), and is in accord with the Longshoremen's and Harbor Workers' Compensation Act of 1977. As explained in the House Report on that statute,

"Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition." (3 U.S.Code Congressional and Administrative News (92nd Cong., 2d Sess., 1972) p. 4704.)

Furthermore, as noted *supra*, the district court gave defendants' instruction No. 29A on the standard of care, so that they may not now complain that the court inadequately instructed the jury concerning the shipowner's standard of care.

 Defendants also urge that they were entitled to six one-sentence instructions. Five of them (Nos. 31A, 33, 34, 35 and 36) were refused because they were merely abstract statements taken from appellate opinions and were suitable in those cases and yet not in this. Likewise instruction No. 32 was refused because it was taken from *Marant v. Farrell Lines*, 550 F.2d 142 (3d Cir. 1977), where plaintiff was injured as a result of a condition correctible by the stevedore, so that, as Judge Leighton recognized, the tendered instruction "doesn't state the applicable rule of law to this case" (Tr. 545).

It was also appropriate for the district court to refuse defendant's proposed instruction No. 44 because it was only an excerpt from an OSHA regulation and dealt only with ladders supplied by Stevedores. As the trial judge noted, that instruction was irrelevant because the plaintiff was injured by a defective ladder that the defendants left in the hold and not by any Stevedore ladder (Tr. 556).

Judgment affirmed.