Thomas D. JOYCE, Plaintiff-Appellant,

v.

ATLANTIC RICHFIELD COMPANY, a
Pennsylvania corporation,
Defendant-Appellee.

No. 79–1772.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 26, 1981.

Decided March 26, 1981.

Rehearings Denied May 27 and
July 1, 1981.

Larry D. Myers, Colorado Springs, Colo., for plaintiff-appellant.

W. Bruce Kopper, Colorado Springs, Colo. and Gerald T. Gelpi of Gelpi, Sullivan, Carrol & LaBorde, New Orleans, La., for defendant-appellee.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

Thomas D. Joyce appeals from the denial of his motions for judgment notwithstanding the verdict, and, alternatively, new trial in an action seeking damages for injuries he sustained aboard the SS ARCO SAG RIVER.

The SS ARCO SAG RIVER is an oil tanker operated by Atlantic Richfield Company (Arco) under a bare boat charter. Joyce was employed by Arco as an ordinary seaman aboard the vessel for a voyage from Long Beach, California to Drift River, Alaska.

On July 24, 1974, following the completion of his watch, Joyce was ordered by the chief mate to clean the starboard spillage traps near the oil cargo hook up equipment. In order to obtain a cleaning solvent for his task, Joyce had to traverse the main deck, walk up a metal ladder to the poop deck, continue aft and then up a second ladder to the boat deck. It was on the boat deck that the cleaning solvent (Aquanox) was stored in upright fifty-five gallon drums lashed to the ship's rails approximately four steps from the top of the ladder. The normal

method of transporting the solvent back to the area of usage was by hand-carried five gallon buckets.

Upon reaching the boat deck, Joyce noticed that Aquanox was on the deck near the storage drums. This was a common condition, causing the deck to be "messy and slippery." R., Vol. II, p. 97. The slippery condition of the deck had been aggravated by a recent rain and fog.

Joyce proceeded across the deck to the storage drums. He then filled his five gallon bucket, and began the journey back to the main deck. As he began down the athwartship ladder leading from the boat deck to the poop deck, his foot slipped, causing his left arm to be thrust between the handrail and the bulkhead. He fractured his left humerus mid-shaft.

The ship's master rendered first aid, splintered the break, and attempted to make Joyce comfortable. Two and one-half days later, Joyce was evacuated from the ship at Homer, Alaska. He was later flown to a United States Public Health Service Clinic in Anchorage, Alaska.

As a result of his injuries, Joyce filed the instant action for damages. The complaint prays for relief under the Jones Act, 46 U.S.C.A. § 688, the doctrine of unseaworthiness, and for want of adequate maintenance and cure. At the conclusion of trial, the jury returned a verdict finding Arco forty percent negligent and Joyce sixty percent negligent. No unseaworthiness was found. Judgment on the verdict was entered in favor of Joyce in the amount of $40,000.00.[1]

The primary issues presented on appeal are whether the District Court erred in: (1) denying Joyce's motion for judgment notwithstanding the verdict and (2) instructing the jury on the issue of contributory negligence. Other issues are raised. In light of our disposition, however, it is not necessary to reach them.

*Judgment Notwithstanding the Verdict*

■ When faced with a motion for judgment notwithstanding the verdict, the standards by which the prerequisite motion for directed verdict is judged control. *Barnett v. Life Insurance Company of the Southwest*, 562 F.2d 15 (10th Cir. 1977). Judgment notwithstanding the verdict may only be granted where the evidence "points all one way and is susceptible of no reasonable inferences that sustain the position of the party against whom the motion is made." *Bertot v. School District No. 1*, 522 F.2d 1171, 1178 (10th Cir. 1975). *See Barnett v. Life Insurance Company of the Southwest, supra* (citing cases); *Burger Train Systems, Inc. v. Ballard*, 552 F.2d 1377 (10th Cir. 1977) (per curiam), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 132 (1977). A mere scintilla of evidence is insufficient to justify the denial of the motion. *Symons v. Mueller Co.*, 493 F.2d 972 (10th Cir. 1974). However, since the grant of such a motion deprives the nonmoving party of a determination of the facts by a jury, judgment notwithstanding the verdict should be cautiously and sparingly granted. *Cleverly v. Western Electric Co.*, 594 F.2d 638 (8th Cir. 1979) (per curiam).[2]

■ On appeal, we employ the same standards of review as that of the trial court. *General Wholesale Beer Co. v. Theodore Hamm Co.*, 567 F.2d 311 (5th Cir. 1978) (per curiam). The trial court's denial is error only where "there is no evidence or dispute or the evidence, although in conflict, is of such a conclusive nature that if a verdict were reached in favor of the party, judicial discretion would require that it be set aside." *Ford Motor Credit Co. v. Milburn*, 615 F.2d 892, 894 (10th Cir. 1980), *quoting, Continental Oil Co. v. Natrona Services, Inc.*, 588 F.2d 792, 800 (10th Cir. 1978).

1. The maintenance and cure count is not at issue, except to the extent that duty to provide medical care relates to the Jones Act, *supra*, claim.

2. Of course, in making this determination the Court cannot weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury. *Yazzie v. Sullivent*, 561 F.2d 183 (10th Cir. 1977).

### A.

We first address Joyce's contentions regarding his unseaworthiness claims in light of the standards outlined above. *Caldwell v. Manhatten Tankers Corp.*, 618 F.2d 361 (5th Cir. 1980).

■ General maritime law imposes a duty upon shipowners to provide seaworthy vessels. *Carlisle Packing Co. v. Sandanger*, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed.2d 927 (1922). This duty requires that the vessel, her gear and crew, be reasonably fit for their intended use. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971); *Waldron v. Moore-McCormack Lines*, 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967); *Morales v. City of Galveston*, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962). It is an absolute duty, independent of the duty of reasonable care mandated by the Jones Act. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). The existence of actual or constructive notice on the part of the shipowner is not required, nor does liability depend on any concept of due diligence on the owner's part. Simply stated, any condition, even though transitory in character, rendering the vessel unfit for her intended use makes the vessel unseaworthy. *Id.* Normally this determination presents a question of fact for the jury. *Dunlap v. G & C Towing, Inc.*, 613 F.2d 493 (4th Cir. 1980).

Without detailing our views, we conclude that the District Court's resolution of this issue was correct. We agree that evidence produced at trial showed Aquanox present on the deck around the storage drums when Joyce arrived at the scene and that this condition was chronic. This, at first blush, brings the case under the line of decisions exemplified by *Schell v. Chesapeake & Ohio Ry. Co.*, 395 F.2d 676 (4th Cir. 1968). On further examination, however, we find the case controlled by *Dunlap v. G & C Towing, Inc., supra.*

Unlike *Schell, supra*, there exists here strong contradictory evidence concerning the possibility that Joyce may have subsequently spilled additional Aquanox, magnifying the slick on which he slipped. Assuming that additional solvent spilled, an added conflict exists as to whether the spill resulted from an allegedly defective barrel pump or solely from Joyce's own actions. A conflict similarly exists as to whether the steps on the ladder were properly painted and what the surface characteristics were.

The evidence here is also susceptible to the interpretation that the Aquanox present on the deck before Joyce's arrival constituted simply a film resulting from misting through pump operation under windy conditions. "The mere existence of such film does not necessarily constitute unseaworthiness." *Dunlap v. G & C. Towing, Inc., supra*, at p. 496. It is only when the film renders the area unfit for its intended use that liability attaches. *Id.* This, of course, requires consideration of safety features such as stair rails (present here) and the ladder's surface characteristics.

■ In this case it was a jury question whether the ladder and contiguous deck were reasonably fit for their intended use at the time of Joyce's injury.

### B.

■ The Jones Act grants "[a]ny seaman who shall suffer personal injury in the course of his employment" the right to seek damages in a jury trial against his employer in the same manner as the Federal Employer's Liability Act (FELA), 45 U.S.C.A. § 51 *et seq.* allows claims by railroad employees. 46 U.S.C.A. § 688. Proof of negligence is essential to recovery under the Jones Act. *Jacob v. New York*, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166 (1942). Such negligence, however, may arise from a dangerous condition on or about the ship, failure to use reasonable care to provide a seaman with a safe place to work, failure to inspect the vessel for hazards and a variety of other breaches of the shipowner's duty of care. *Davis v. Hill Engineering, Inc.*, 549 F.2d 314 (5th Cir. 1977). As with the doctrine of unseaworthiness, contributory negligence and assumption of the risk are not available

to bar recovery by a seaman. *Jacob v. New York, supra,* 315 U.S. at p. 755, 62 S.Ct. at p. 855. Rather, a pure comparative negligence standard applies. *Johannessen v. Gulf Trading and Transport Co.,* 633 F.2d 653 (2d Cir. 1980); 45 U.S.C.A. § 54.

 In Jones Act cases, a more severe standard controls the determination of whether the grant of a *defendant's* motion for judgment notwithstanding the verdict is proper. *Caldwell v. Manhatten Tankers Corporation, supra; Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969) (en banc). In those classes of cases, entry of a directed verdict is proper "only when there is a *complete absence* of probative facts" supporting the claimant's position. *Id.* at p. 370. Whether this standard also applies to motions to direct liability in the *seaman's favor* remains an open question. *See Allen v. Seacoast Products, Inc.,* 623 F.2d 355 (5th Cir. 1980) (suggesting Jones Act, FELA standard may not apply under these circumstances).

 Applying either standard, we hold that the Court correctly submitted the issue to the jury. Our reasons parallel those provided as to the unseaworthiness count. Additionally, we observe that Arco's constructive knowledge of the presence or absence of the Aquanox presented a question of fact for the jury as it related to the negligence count.

The motion for judgment notwithstanding the verdict was properly denied as to the Jones Act count.

### Contributory Negligence

Joyce claims error in the charge to the jury contending it impermissibly injected the doctrine of assumption of the risk into the issues of the case.

 In reviewing allegations of error in instructions we must consider whether the charge is "comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury." *Scheib v. Williams-McWilliams Co., Inc.,* 628 F.2d 509, 511 (5th Cir. 1980). If these conditions have been met, reversal is not warranted. We must,

of course, make this determination "in the light, not only of the instructions as a whole, but of the allegations of the complaint, the opening statements, the evidence, and the closing arguments." *Alloy International Co. v. Hoover-NSK Bearing Co.,* 635 F.2d 1222, 1226 (7th Cir. 1980).

 Assumption of the risk is not a defense to a seaman's claims under the Jones Act or where the doctrine of unseaworthiness is found to apply. *Socony-Vacuum Oil Co. v. Smith,* 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939). Contributory negligence is, however, a valid defense if it does not result in a complete bar of all claims, but rather in an allocation of fault on a comparative basis. *Johannessen v. Gulf Trading and Transport Co., supra.*

The distinction between assumption of risk and contributory negligence in a maritime setting has not always been clearly understood. A seaman may not be denied recovery because he proceeds in an unsafe area of the ship or uses an unsafe appliance in absence of a showing that there was a safe alternative available to him. In an oft-cited case the court wrote, "Had an alternative, safe route been available to Smith, his deliberate choice of a course known to be unsafe could possibly have indicated contributory fault but mere knowledge of the unseaworthy condition and use of the ladder in the absence of a showing that there was an alternative is not contributory negligence." *Smith v. United States,* 336 F.2d 165, 168 (4th Cir. 1964) . . . One court has stated the rule, "no risk that can be reasonably controlled by the ship owner is assumed by the seaman." *Reyes v. Vantage S.S. Co.,* 558 F.2d 238, 244 (5th Cir. 1977).

\* \* \* \* \* \*

To determine whether plaintiff was guilty of contributory negligence we must focus on his actions after he assumed the risk of working with the defective rig since the defense of contributory negligence requires evidence of some negligent act or omission by the plaintiff

other than his knowledgeable acceptance of a dangerous condition. *Rivera v. Farrell Lines, Inc.,* 474 F.2d 255, 257–58 (2d Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973). The burden of proving that the plaintiff failed to exercise due care is on the defendant. *Nolan v. Greene,* 383 F.2d 814 (6th Cir. 1967); *Mason v. Mathiasen Tanker Industry, Inc.,* 298 F.2d 28, 32 (4th Cir.), *cert. denied,* 371 U.S. 828, 83 S.Ct. 23, 9 L.Ed.2d 66 (1962). *Tolar v. Kinsman Marine Transit Co.,* 618 F.2d 1193, 1195, 1196 (6th Cir. 1980).

The instructions to the jury in this case contained a general explanation of the defense of contributory negligence and the defendant's burden of proving the existence of the defense. No allegation of error is made as to these instructions. Immediately after these instructions, however, the Court gave the following instructions which are challenged on appeal:

Number 33. Defendant ship owner, the Atlantic Richfield Company, alleges that the Plaintiff at the time and place in question was guilty of contributory negligence. In that the Plaintiff then and there failed to use ordinary care under the existing circumstances for his own safety and by failing to keep a watch on the conditions surrounding him in his work, by failing to notice danger which was obvious or would have been obvious to any reasonably prudent person exercising ordinary care under then existing circumstances.

33–A. There was no duty to warn a seaman of an obvious condition or danger which he can see and observe through the ordinary use of his senses. Failure to warn a seaman of a fact or condition of which he was aware or which he should have been aware does not breach any duty owed a seaman. R., Vol. VII, pp. 18–19.

While these instructions were framed in contributory negligence terms, we must hold that, in substance, they impermissibly injected the doctrine of assumption of the risk into the issues of the case.[3] The focus of these instructions is on Joyce's actions in accepting the dangerous condition. Instead, proof of contributory negligence requires evidence of some negligent act or omission on Joyce's part over and above his acceptance of the danger. *Rivera v. Farrell Lines, Inc.,* 474 U.S. 255 (2d Cir. 1973), *cert. denied,* 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973) (charge which permitted jury to consider messman's knowing acceptance of slippery floor, and which did not require act of negligence other than messman's knowledgeable encounter with dangerous condition, improperly permitted defense of assumption of risk to go to jury). *See* Gilmore and Black, The Law of Admirality, § 6–27a (1975), (noting disagreements between the circuits: *Tolar v. Kinsman Marine Transit Co., supra; Reyes v. Vantage S. S. Co., Inc.,* 558 F.2d 238 (5th Cir. 1977), *modified,* 609 F.2d 140 (5th Cir. 1980); *Rivera v. Farrell Lines, Inc., supra; Rivera v. Rederi A/B Nordstjernan,* 456 F.2d 970 (1st Cir. 1972, *cert. denied,* 409 U.S. 876, 93 S.Ct. 124, 34 L.Ed.2d 728 (1972); *Smith v. United States,* 336 F.2d 165 (4th Cir. 1964). *Contra, Mroz v. Dravo Corp.,* 429 F.2d 1156 (3d Cir. 1970); *DuBose v. Matson Navigation Co.,* 403 F.2d 875 (9th Cir. 1968)). The Court's instructions should have admonished the jury that: "You may not find contributory negligence on the part of the plaintiff, however, simply because he acceded to the request or direction of the responsible representatives of his employer that he work at a dangerous job, or in a dangerous place, or under unsafe conditions." Devitt and Blackmar, Fed. Jury Prac. and Instructions (3d Ed.) § 94.16.[4]

---

3. These instructions appear to be a combination of portions of Devitt and Blackman, Fed. Jury Prac. and Instructions (3d Ed.) §§ 96.35 and 96.40. The text of Instruction § 96.35 has been withdrawn. Instruction § 96.40 (applicable to the Longshoreman and Harbor Workers Compensation Act, 33 U.S.C.A. § 901 *et seq.*)

conflicts with Instruction § 94.16 (applicable under the Jones Act).

4. A similar instruction, although not proper in all respects, was tendered by Joyce and refused. R., Vol. I, pp. 98–99.

The verdict must be set aside because the finding of Joyce's contributory negligence may have been linked to the erroneous charge. Inasmuch as damages and contributory negligence are so interwoven in Jones Act cases, we must remand for a new trial.[5]

REVERSED AND REMANDED.

### Petition for Rehearing

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

In its petition for rehearing, ARCO challenges the extent of our remand order. ARCO contends, *inter alia*, that the case should be remanded solely for determination of the parties' comparative fault.

### Preliminary Observations

■■■■ If all questions surrounding the issues of liability and extent of damages were settled, a limited remand for comparison of the parties' fault would be proper. Fed.Rules Civil Proc. Rule 59, 28 U.S.C.A. *Cf. Trejo v. Denver & R.G.W. R. Co.*, 568 F.2d 181 (10th Cir. 1977) (remand for new trial on damages issue only). This is so because "the matter involved is entirely distinct and separable from other matters involved in the [lawsuit] ... and ... no possible injustice can be done to either party" by limiting the issues on retrial. *Norfolk Southern Railroad Company v. Ferebee*, 238 U.S. 269, 274, 35 S.Ct. 781, 782, 59 L.Ed.2d 1303 (1915); *Trejo v. Denver & R.G.W. R. Co., Inc.*, supra. *See also Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). Thus, the extent of the remand directly correlates with our disposition of the issues. If error is found on any issue affecting liability or the extent of damages, remand for a redetermination of those issues must be made. *Rivera v. Farrell Lines, Inc.*, 474 F.2d 255, 259 (2d Cir. 1973), *cert. denied*, 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973).

In our opinion, filed March 26, 1981, we declined to reach certain issues raised by Joyce on appeal. Inasmuch as the extent of our remand order depends on our resolution of these issues, we now elect to treat them. These issues surround the remainder of the trial court's charge, and its handling of the jury's deliberative inquiries.

### Failure to Provide Swift and Adequate Medical Care

At trial, Joyce maintained ARCO failed to make reasonable efforts to provide him with swift and adequate medical attention. The jury, he argues, was not properly instructed on the elements of this claim. We agree.[1]

■■■■ Generally, shipowners must provide maintenance and cure to seamen injured in service of the ship. *Vella v. Ford Motor Co.*, 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975); *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). On vessels lacking adequate medical facilities this duty requires the shipowner, if necessary, to promptly evacuate the injured to a hospital or put into the nearest port where treatment is available. *The Iroquois*, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955 (1904); *Central Gulf Steamship Corp. v. Sambula*, 405 F.2d 291 (5th Cir. 1968). *See* Gilmore and Black, *The Law of Admirality*, § 6–13 (1975). If it is established that a breach of this duty has contributed in any manner to additional pain, disability or prolonged recovery, an action for damages may be brought under the Jones Act, 46 U.S.C.A. § 688. *Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932), *overruled on other grounds, Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), *Picou v. American Offshore Fleet, Inc.*, 576 F.2d 585 (5th Cir. 1978); *Stevens v. Seacoast Co.*, 414 F.2d 1032 (5th Cir. 1969);

---

**5.** On remand, the District Court may wish to consider the jury instructions contained in District Judges Asso. of the Fifth Circuit's Pattern Jury Instructions (Civil), Federal Instruction 7A (1980).

**1.** The motion for judgment notwithstanding the verdict as to this issue was properly denied.

*Central Gulf Steamship Corp. v. Sambula, supra;* *Bass v. Warren Fish Co.,* 245 F.2d 43 (5th Cir. 1957); *Sims v. United States War Shipping Administration,* 186 F.2d 972 (3d Cir. 1951), *cert. denied,* 342 U.S. 816, 72 S.Ct. 31, 96 L.Ed. 617 (1951). *See* Gilmore and Black, *supra,* at § 6–13. Whether a breach of this duty has occurred presents a question of fact. *The Iroquois, supra.*

■ Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief. *See e. g. Jewell v. The Ohio River Co.,* 1967 A.M.C. 1724 (W.D.Pa.1966), *aff'd per curiam,* 431 F.2d 691 (3rd Cir. 1970) (plaintiff, who had recovered Jones Act damages for original injuries, allowed to bring second Jones Act claim for aggravation of original injuries); *Ladjini v. Pacific Far East Line, Inc.,* 97 F.Supp. 174 (N.D.Cal.1951) (awarding separate damages for aggravation of original injuries). The charge to the jury in this case, however, combined the slip and fall claim with the alleged failure to provide prompt medical assistance. This was error. It is possible for a jury to find that the initial injury resulted entirely from the seaman's own negligence, while at the same time assessing damages for aggravation of that injury based on the shipowner's post-accident omissions. *See e. g. Sims v. United States War Shipping Administration, supra,* (non-shipowner caused illness aggravated by failure to provide post-termination care). Similarly, the extent of each party's comparative fault may differ under each claim for relief.

In sum, we hold that the court erred in not submitting separate instructions and in not requiring separate findings as to each claim for relief. The instructions, on remand, should caution the jury that a double recovery is precluded.[2]

### Causation Instructions

■ Joyce argues that the court erred in its causation instructions to the jury. Inasmuch as no objections were lodged to the

challenged instructions, our review is limited to a determination of whether plain error occurred. Fed.Rules Civ.Proc. Rule 51, 28 U.S.C.A.

■ It is settled that in Jones Act cases causation may be found if the defendant's acts or omissions played any part, no matter how small, in bringing about the injury. *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); *Ferguson v. Moore-McCormack Lines, Inc.,* 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957) (plurality opinion). The courts disagree, however, as to the proper test of causation in unseaworthiness actions. Some circuits apply a "substantial factor" standard of causation. *Spinks v. Chevron Oil Company,* 507 F.2d 216 (5th Cir. 1975), *modified,* 546 F.2d 675 (5th Cir. 1977); *Shaw v. Lauritzen,* 428 F.2d 247 (3d Cir. 1970). Others simply apply the Jones Act-FELA standard to unseaworthiness claims. *Milos v. Sea-Land Service, Inc.,* 478 F.Supp. 1019, 1023 (S.D.N.Y.1979), *aff'd mem.,* 622 F.2d 574 (2d Cir. 1980); *Peymann v. Perini Corp.,* 507 F.2d 1318, 1324 (1st Cir. 1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1974); *Farnarjian v. American Export Isbrandtsen Lines, Inc.,* 474 F.2d 361 (2d Cir. 1973). *See also:* Devitt and Blackmar, *supra,* § 96.22.

■ We hold that plain error did not occur in connection with the challenged instructions. Fed.Rules Civil Proc. Rule 61, 28 U.S.C.A. The Jones Act causation instructions were correct. The use of the term proximate cause in the damage instruction, while inadvisable, was not clearly erroneous. *Litherland v. Petrolane Offshore Const. Services,* 546 F.2d 129 (5th Cir. 1977); *Farnarjian v. American Export Isbrandtsen Lines, Inc., supra.* The instructions on the Jones Act claim, combined with the special verdict form, adequately conveyed to the jury the proper standard of causation.

---

2. ARCO does not meet this argument directly. Instead, it urges affirmance on the grounds that

the evidence does not support such a charge as a matter of law. We disagree.

■ With regard to the unseaworthiness claim, the Court instructed the jury that "the ship owner or operator is liable for all injuries and consequent damages proximately caused or contributed to *in whole or in part* by an unseaworthy condition . . ." [Emphasis supplied]. [R., Vol. VII, pp. 11, 15]. This charge, of course, was more generous to Joyce than the already liberalized *Spinks, supra,* test of causation. Assuming that the Jones Act-FELA standard of causation applies, we hold that plain error did not occur. *Cf. Farnarjian v. American Export Isbrandtsen Lines, Inc., supra,* (harmless error found where jury charged that negligence, if proven, was a proximate cause "in whole or in part").

■ In any event, we believe the *Spinks, supra,* line of cases represents the better view. Our adherence to *Spinks, supra,* is based on the narrow application FELA and Jones Act standards have been given in other areas. These statutes represent unique remedial legislation. *See Matthews v. Ernst Russ S.S. Co.,* 603 F.2d 676 (7th Cir. 1979) (applying same standard to Longshoremen's and Harbor Workers' Compensation Act of 1977, 33 U.S.C.A. § 901 *et seq.*). At the same time we recognize that seamen are "wards of the Court" and developments in the maritime field have been skewed in their favor. By relaxing the common-law test of causation, *Spinks, supra,* recognized this trend.

### Remaining Contentions

■ Joyce argues that the Court erred in refusing his proposed instruction detailing his contentions as to ARCO's duty to furnish a reasonably safe place in which to work. [R., Vol. I, p. 96]. It is not error for a court to refuse to adopt the precise terminology of a properly proposed instruction, providing the substance thereof is fully stated. *Vesper Const. Co., Inc. v. Rain for Rent, Inc.,* 602 F.2d 238 (10th Cir. 1979). The Court's instructions adequately covered Joyce's contentions concerning the duty to

furnish a reasonably safe place in which to work.

■ Joyce contends the Court erred in refusing to answer or clarify the jury's deliberative inquiries concerning the calculation of comparative negligence and damages. Once the jury has been correctly charged, the extent of amplification, if any, rests within the sound discretion of the trial court. *United States v. Bayer,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947). We recognize that the instructions and special verdict in the challenged areas were not clear in all regards. Even so, they were substantially correct. The Court did not abuse its discretion in refusing to reinstruct.

■ Similarly, we find no error in the Court's instruction that Joyce's theory of the case alone was not evidence. The questions surrounding the taxation of costs are not now properly before us in light of our mandate. *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 233, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1965); Wright & Miller, Fed. Prac. and Proc.: Civil § 2668.

### Conclusion

We hold that the Court erred in failing to properly instruct regarding the claimed failure to provide swift and adequate medical care. This theory was inextricably intertwined with the primary Jones Act claim on both the liability and damage aspects. This, accordingly, necessitates retrial on all aspects of the Jones Act claims. *Norfolk Southern Railroad Company v. Ferebee, supra.* The liability determination under the unseaworthiness count, however, is affirmed.

Our opinion of March 26, 1981, is, upon rehearing, supplemented to the extent of our discussion hereinabove set forth. To the extent that this opinion denies specific relief requested upon rehearing, such relief is denied.[3]

---

**3.** We do, however, observe that in *Byrd v. Reederei,* 638 F.2d 1300 (5th Cir. 1981), the court followed the rule announced in *Rivera v.*

*Farrell Lines, Inc., supra,* concerning the assumption of the risk instructions. *See also, Sessler v. Allied Towing Corp.,* 538 F.2d 630

(4th Cir. 1976). Recently in *Scindia Steam Navigation Co., Ltd. v. De Los Santos,* —— U.S. ——, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) the Court, in an action under the LHWCA, stated:

We agree with the Court of Appeals that the shipowner may not defend on the ground that Santos [longshoreman] should have refused to continue working in the face of an obviously dangerous winch which its employer, Seattle [stevedore], was continuing to use. The District Court erred in ruling otherwise, since the defense of assumption of the risk is unavailable in § 905(b) [of the LHWCA] litigation.

*Scindia Steam Navigation Co., Ltd. v. De Los Santos, supra,* —— U.S. at p. —— n. 22, 101 S.Ct. at p. 1626 n. 22, 68 L.Ed.2d at p. 18 n. 22. This, of course, appears to call into serious question the text of instructions §§ 96.35 and 96.40 of Devitt and Blackmar. *See* panel opinion, *supra* 683 n. 3.