**PUERTO SEGURO CIA. NAVIERA, S. A.,
Claimant-Respondent, Appellant,**

v.

**Petros PITSILLOS, Appellee.**

No. 8062.

United States Court of Appeals
Fourth Circuit.

Argued April 18, 1960.

Decided June 20, 1960.

———◆———

John W. Winston, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellant.

Sidney H. Kelsey, Norfolk, Va., for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAMLEY,* Circuit Judges.

SOBELOFF, Chief Judge.

Alleging both unseaworthiness and negligence, Petros Pitsillos, a galley boy or second cook on the S/S GEORGE, who sustained personal injuries, brought this action in the District Court for the Eastern District of Virginia. After taking evidence, the District Judge concluded that "a cause of action based upon unseaworthiness may be sustained under the facts here presented," and awarded damages. The shipowner appealed, and Pitsillos at first cross-appealed on the ground that the damages were inadequate, but the cross-appeal was voluntarily withdrawn.

About 6:30 a. m. on July 13, 1957, while the ship was en route from Gibraltar to Hampton Roads, Virginia, Pitsillos entered the galley to begin his day's work. Noticing that a can of cooking oil had been overturned on the stove and that oil had been spilled, he got a rag to clean off the stove before beginning to cook. In approaching the stove, however, Pitsillos slipped on oil which had spilled from the stove onto the floor. He fell against the corner of a meat block and injured his left testicle, which later was surgically removed.

█ Initially, the shipowner contends that the evidence is not sufficient to prove that cooking oil on the floor of the galley caused Pitsillos to slip. Pitsillos' own testimony, however, was to that effect, and there was no contradiction. Vlachos, a messboy, testified that he saw no cooking oil on the floor, but he did not go into the galley until an hour and a half after the accident. Another witness, the cook, Diomandopoulos, testified that the floor was clean about 6:50 a. m., but this was some twenty minutes after the accident. It was not shown that the oil was not wiped up during this interval. Moreover, the cook said that when he went to see Pitsillos early that morning as soon as he learned of the accident, Pitsillos told him of his slipping and falling against the meat block.

* Sitting by designation of the Chief Justice.

There was considerable testimony that the galley was used at night and at least sometimes left dirty. No provision was made for cleaning up before the following morning. Captain Pavlidas explained that "during the night some of the crew might enter the galley, which is not closed at night, probably to fix a coffee, you know. The galley gets dirty during the night, naturally, so first thing in the morning before he [plaintiff] starts, he has to clean the galley * * *." Another member of the crew testified that the night crew sometimes fried eggs and potatoes in the galley and used cooking oil for that purpose. He added that, "sometimes, somehow, it [the galley] is getting dirty."

It is undisputed that the plaintiff sustained the injury at the time claimed, and the shipowner offered no explanation of its cause. In light of the record before him, the District Judge was clearly warranted in accepting Pitsillos' testimony and finding that the cooking oil caused the accident.

The shipowner further insisted in the District Court and on appeal that even if there was cooking oil on the galley floor, it was a mere transitory condition which would not give rise to a cause of action for unseaworthiness. Counsel stressed that there was no showing that the ship's officers' knew or should have known of the condition. The defendant relied heavily in its brief and oral argument on the decision of the First Circuit in Mitchell v. Trawler Racer, Inc., 1 Cir., 1959, 265 F.2d 426.

Since the argument before us the Supreme Court has reversed that decision in 362 U.S. 539, 549, 80 S.Ct. 926, 933, 4 L.Ed.2d 941. This makes it unnecessary to inquire whether the condition found by the District Court was or was not transitory. The "transitory unseaworthiness" doctrine has been laid to rest by the Supreme Court's square holding that "the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability," and that Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601,

98 L.Ed. 798 "effectively disposes of the suggestion that liability for a temporary unseaworthy condition is different from the liability that attaches when the condition is permanent."

Affirmed.