Dodd, Hirsch, Barker & Meunier, Harold J. Lamy, New Orleans, La., for plaintiff.

Lemle & Kelleher, Charles E. Lugenbuhl, New Orleans, La., for defendant.

AINSWORTH, District Judge.

Frank Halem, a seaman, has brought suit under the Jones Act (46 U.S.C. § 688) and under the General Maritime Law for injuries he received while employed as a member of the crew of the SS ALICE BROWN in a capacity of chief cook.

On June 29, 1960, the ship was in the North Sea en route from Bremerhaven, Germany, to Rotterdam, Holland. The vessel was light. During the night and early morning hours it encountered a storm and the vessel was hove to on its course waiting for the storm to abate.

At about 5:00 a. m. the rolling of the ship in the severe weather caused a five-gallon can of cooking oil to upset and spill over the entire galley floor. The galleyman was roused to clean up the galley, which he did with some rags and mops. He testified that he cleaned up as much of the grease as best he could but the floor was still slippery. The messman came on at 6:30 a. m., and testified that the floor was greasy and very slippery and it was difficult to keep his footing for he was sliding all over. He told the chief steward that something should

**Frank HALEM, Plaintiff,**

v.

**BLOOMFIELD STEAMSHIP COMPANY, Defendant.**

**Civ. A. No. 10907.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 20, 1964.

be done about the floor to prevent anyone being hurt. At 8:00 a. m. plaintiff came on duty. He immediately put on his apron, lifted a piece of ham to the meat block and the ship rolled heavily. He attempted to brace himself and to grab hold but his feet slipped and he skidded across the galley falling against the dumb-waiter causing physical injuries, particularly to his ribs, several of which were fractured.

Plaintiff contends that his fall was occasioned by the heavy roll of the ship in combination with the grease which still remained on the galley floor. He believed his injuries were due half to the roll of the ship and half to the grease on the floor. Respondent's defense is that the fall occurred entirely as a result of the unusual weather and particularly from the roll of the ship which threw plaintiff against the dumb-waiter; that the floor was not greasy. The court is obliged to resolve the conflicting testimony, for plaintiff's witnesses and defendant's are in sharp conflict.

■■■■ We find from all of the evidence that the ship was hove to and in bad weather and heavy seas in the night and early morning hours of the day of this accident; that a large quantity of cooking oil was accidentally spilled on the galley floor because of the rolling of the ship and the cooking oil was cleaned up by the galleyman as best he could, but some grease remained. The messman reported the slippery condition of the galley to the chief steward. Thereafter plaintiff came to work and had been on the job for only a minute or two when the ship took a heavy roll. Plaintiff began to feel his feet slipping from under him, attempted to grab hold without avail, and slid rapidly and with considerable force across the galley into the dumb-waiter, injuring himself. The vessel was, therefore, unseaworthy as a result of grease on the galley floor. It is settled by Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), that a so-called transitory condition, as the temporary presence of oil, water or other foreign substance, will make the ship unseaworthy as does a permanent defect, and the shipowner's duty to furnish a seaworthy ship is absolute. 2 Norris, The Law of Seamen, 2d Ed., § 629. See also Puerto Seguro Cia. Naviera, S. A. v. Pitsillos, 4 Cir., 1960, 279 F.2d 599, which involved a seaman who fell in a galley because of cooking oil on the floor and was allowed recovery for the unseaworthy condition which caused his injury. Plaintiff had no notice of the grease and insufficient time to discover the hazardous condition of the floor which would render him contributorily negligent. Ktistakis v. United Cross Navigation Corp., 2 Cir., 1963, 316 F.2d 869. The galley floor should have been cleaned in order to prevent accidents occurring to the ship's crew. If this could not be done, the floor could have been covered with salt or other abrasive material to prevent slipping by the ship's personnel. After the accident the chief steward ordered bedspreads to be thrown on the floor and wet down to prevent other casualties. The testimony of the chief mate that he did not see any grease on the floor does not overcome the other positive evidence of several witnesses that there was.

■■■ Plaintiff was painfully injured, having fractured three or four ribs. He also claims additional injuries to his back. He was hospitalized in Rotterdam for eleven days and returned to the United States more than two months after the accident. He then became a patient at the United States Public Health Hospital at New Orleans for an additional period. However, we are not convinced that the treatment at this time was due to injuries received when he slipped and fell. On the contrary, the principal reason for his admission to the hospital was for the treatment of glaucoma. The evidence is, therefore, unconvincing that his convalescence in the hospital and thereafter was due to injuries sustained in the voyage in which he was originally hurt. We have considered all of the facts and circumstances and be-

lieve that an award of $5,000 is adequate under the circumstances.

Judgment will, therefore, be entered for plaintiff in accordance with this opinion.