George E. SCHELL, Appellant,

v.

The CHESAPEAKE & OHIO RAILWAY COMPANY, Appellee.

No. 11375.

United States Court of Appeals Fourth Circuit.

Argued Dec. 7, 1967.

Decided May 7, 1968.

Edward R. Baird, Norfolk, Va. (Baird, Crenshaw & Ware, Norfolk, Va., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

█ The district judge, although he decided that the tug GEORGE W. STEVENS had not been temporarily withdrawn from navigation and that plaintiff, a shore-based machinist's helper in the marine mechanical department of the defendant, the owner of the tug, was doing the traditional work of a seaman and could maintain a suit against his employer for negligence or unseaworthiness despite the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., nevertheless concluded that defendant was not negligent and the tug was not unseaworthy in the respects in which plaintiff contended caused his personal injuries. We agree with the district judge's conclusions, except as to the unseaworthiness of the tug, for the reasons advanced by him.[1] We conclude that unseaworthiness of the tug, causing plaintiff's injuries, was established as a matter of law; therefore, we vacate the judgment for defendant, and on remand, direct the entry of judgment for the plaintiff on liability and the assessment of damages.

The tug docked at Newport News to permit the renewal of the worm gear and thrust rings of the tug's steering engine, a minor and normal repair requiring only twelve hours for completion. To effect the repair, the crank shaft of the steering engine was removed and

Edwin Jay Rafal, Norfolk, Va. (Harold Gavaris, and Stant, Moss, Rafal, Stokes & Gavaris, Norfolk, Va., on brief) for appellant.

1. As to whether the tug was withdrawn from navigation, the work done was a minor or normal repair performed at the owner's own repair facilities. It took twelve hours to accomplish. While seamen were not on board, because of the nature of the vessel, no crew ever lived aboard. See, Lawlor v. Socony Vacuum Oil Co., 275 F.2d 599 (2 Cir. 1960).

Land-based employees, other than, longshoremen, can sue their employer when they are injured doing the traditional work of seamen, despite the Longshoremen's and Harbor Workers' Compensation Act. Reed v. The S. S. Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); Biggs v. Norfolk Dredging Company, 360 F.2d 360 (4 Cir. 1966).

taken ashore where the thrust rings and worm gear were removed and replaced.

The steering engine was surrounded by a raised platform reached by a ladder consisting of five steps; and after the crank shaft was removed, plaintiff was instructed to go aboard to clean the platform off. Armed with rags, two buckets and a quantity of burlap, plaintiff had no difficulty in ascending the ladder. According to him the steps were at that time "okay."

Plaintiff engaged in the cleaning operation for more than an hour when he concluded to empty his buckets, by now filled with oil and grease saturated rags, in the fire pit. He proceeded to the head of the ladder, put down his buckets and wiped off his shoes. He examined the top step, turned around and descended the ladder backwards with a hand on each railing. According to his testimony, which was the only evidence about the happening of the accident,[2] "after I got on the second step, I slipped and my left leg went through the—from the second step and the top step up in my thigh, way above the knee, and the right one went over the side of the ladder." After the accident plaintiff noticed that there was black grease, about the size of a dollar bill, on the dark metal step. At trial, medical evidence was offered to prove that as a result of his fall, plaintiff suffered impaired circulation of both legs with permanent disability.

Reference need be made to only three decisions to establish that plaintiff's testimony was sufficient to show the tug unseaworthy; Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Grzybowski v. Arrow Barge Co., 283 F.2d 481 (4 Cir. 1960); Puerto Sequro Cia. Naviera, S. A. v. Pitsillos, 279 F.2d 599 (4 Cir. 1960). In the *Mitchell* case, which, as we pointed out in both of our decisions cited, squarely and flatly put to rest the transitory unseaworthiness doctrine, a crew member of a fishing trawler was posited entitled to recover, on the theory of unseaworthiness, when he slipped and lost his footing while stepping on the ship's rail, in order to reach a ladder attached to the pier, which was covered for a distance of ten or twelve feet with slime and fish gurry apparently from an earlier unloading operation. We reached a similar result in *Grzybowski,* where a longshoreman slipped on pine jelly soap which was spread over areas of the hold to reduce surface friction and thus to speed the operation of sliding packs of steel into position. In *Pitsillos,* we sustained recovery by a galley boy who slipped on cooking oil which had been spilled on the floor of the galley, unseen by him, as he approached the stove to clean it of oil which had been spilled on it.

Plaintiff's testimony in this case was uncontradicted. The district judge made no adverse determination as to his credibility and he "assume[d]" that the grease was on the step prior to plaintiff's injury. We think that the appeal presents no factual issue; however long or short a time that the grease was on the step, it rendered the ladder unseaworthy and plaintiff's fall was the proximate result. Understandably, plaintiff did not see black on black when he inspected the ladder prior to ascending it or prior to descending it. That plaintiff was sent for the purpose of cleaning up grease or oil from the platform to which the ladder reached does not alter plaintiff's right to recover. Puerto Sequro Cia. Naviera, S. A. v. Pitsillos, supra; cf. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

We vacate the judgment and remand the case for entry of a decree of liability and the assessment of damages.

Judgment vacated and remanded.

2. In response to an interrogatory, defendant admitted that the ladder or stairs had been coated with grease and/or oil for twenty-four hours when the accident occurred. At trial an effort was made to explain away or to minimize this admission.