531 So.2d 231 (1988)
Mateus Da Cunha DOS SANTOS, Appellant,
v.
AJAX NAVIGATION CORP., Apollo Ship Chandlers, Inc., and Britannia Ships Services, Ltd., Appellees.
No. 87-2037.
District Court of Appeal of Florida, Third District.
September 20, 1988.
*232 Brett R. Rivkind and Charles R. Lipcon, Miami, for appellant.
Hayden & Milliken and Domingo C. Rodriguez, Miami, for appellees.
Before SCHWARTZ, C.J., DANIEL S. PEARSON, J., and JOHN W. DELL, Associate Judge.
JOHN W. DELL, Associate Judge.
This appeal arises out of an action for personal injuries sustained by appellant during the course of his employment as a passenger cruise ship waiter. Appellee Ajax Navigation Corp. (Ajax) owned the vessel. Appellee Britannia Ships Services, Ltd. (Britannia) provided the ship with food and beverage personnel and appellee Apollo Ship Chandlers, Inc. (Apollo) provided Britannia with the personnel it furnished *233 Ajax.[1] Appellant seeks reversal of the final judgment and post-judgment order which denied his motion for a new trial and/or judgment notwithstanding the verdict. Appellees cross-appeal from the final judgment and post-judgment order which also denied their motion for judgment notwithstanding the verdict or, in the alternative, a remittitur.
While working the dinner shift on the S/S Britannia appellant slipped on butter located on the floor in an area of the kitchen where the waiters picked up the food to serve the passengers and where they returned dirty dishes. The only persons allowed in the area where appellant fell were crew members. Appellant did not spill the butter but saw it on the floor after he fell. Appellant suffered a fracture of the left wrist which resulted in a permanent impairment of his left upper extremity.
After an initial examination by the ship's doctor, appellant received treatment at the Port of Miami clinic. Appellant's employer sent him to his home in Portugal to recuperate. He was given $500 for expenses but no arrangements were made for his medical care while in Portugal. A doctor in Portugal removed the cast on his arm. Approximately six weeks after the accident, appellant returned to the United States and began work aboard another cruise ship, the S/S Royale. However, within one week it became clear that he had not recovered sufficiently to do the work. The ship's physician's medical report stated that appellant was unfit for duty.
Shortly after receipt of the medical report, Apollo sought the services of a security company to return appellant to Portugal. When Apollo's personnel manager told appellant that he would be escorted to the airport and returned to Portugal, appellant asked for money for living expenses and medical care. Apollo did not respond to his request. Rather, two security guards (in uniform, with badges and handguns) picked up appellant, handcuffed him, and forcibly escorted him to a bus stop to wait for the bus to the airport. Appellant told the men he did not want to go with them and showed them a paper from immigration that confirmed he had another day left on his visa to remain in Miami. The men took the paper from him, but did not release him. Appellant returned to Portugal without arrangements for his medical care or money for living expenses.
Appellant filed a multi-count complaint in which he claimed damages for:
1. Jones Act negligence;
2. Unseaworthiness;
3. Maintenance and cure and punitive damages for wilful and arbitrary failure to provide maintenance and cure;
4. Failure to promptly treat;
5. False imprisonment and punitive damages for false imprisonment.
The trial court directed a verdict against appellant on his claims for damages pursuant to the Jones Act (46 U.S.C.App. § 688), punitive damages for wilful and arbitrary failure to provide maintenance and cure and punitive damages for false imprisonment. The trial court also directed a verdict in favor of appellant on the Britannia and Apollo's affirmative defense of comparative negligence. The jury returned a verdict against Britannia and Apollo in the amount of $30,000 on appellant's claims for maintenance and cure, failure to promptly treat and false imprisonment, but found against appellant on his claim for unseaworthiness. The trial court entered final judgment against Britannia and Apollo and awarded appellant $30,000.[2]
Appellant raises four points on appeal. He claims the trial court erred in granting a directed verdict on his claim for damages under the Jones Act; in giving appellees' requested jury instruction on unseaworthiness; in directing a verdict on appellant's claim for punitive damages for wilful and arbitrary failure to provide maintenance *234 and cure; and in directing a verdict against him on his claim for punitive damages for false imprisonment. On cross-appeal, appellees claim the court erred in entering judgment on the jury's award of $10,000 for maintenance and cure; in entering judgment on the jury's award for false imprisonment; and in directing a verdict in favor of appellant on appellees' defense of comparative negligence. We reverse and remand for a new trial.
Appellant first argues that the trial court erred in granting a directed verdict on his claim for damages under the Jones Act. We agree. The record supports appellant's synopsis of the evidence which he introduced in support of his claim under the Jones Act:
1. Plaintiff slipped and fell in an area where the waiters would come back and forth to pick up food and to return dirty dishes;
2. The area was always very crowded;
3. The area was where the dishes were cleaned;
4. The waiters were required to work very fast  Plaintiff worked seven days a week, three meals a day plus the midnight buffet twice a week, and worked two passenger sittings for each meal;
5. The floor where Plaintiff slipped was made of a plastic that was very slippery when any liquids would spill on it;
6. While the waiters were serving dinner, no one was assigned to keep the area clean where the waiters were required to work, but instead the cleaners were assigned to clean the area at the end of the evening;
7. Only crewmembers were allowed in the area where the Plaintiff fell, no passengers were allowed;
8. Plaintiff was not given any special shoes to wear;
9. Plaintiff did not spill the butter. He saw the butter on the floor after he fell.
Appellees respond by arguing that appellant failed to show the length of time that the butter was on the floor or that another crewman negligently dropped the butter on the floor.
A cause of action for negligence arises under the Jones Act if a shipowner fails to provide a reasonably safe place to work for its crew. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). In Matson Navigation Co. v. Hansen, 132 F.2d 487, 488 (9th Cir.1942), the court said:
Obviously, the test of reasonable safety varies with the prevailing conditions... . The test is whether the requirement of the sailor is one which a reasonably prudent superior would order under the circumstances. American Pacific Whaling Co. v. Kristensen, 9 Cir., 93 F.2d 17.
In a Jones Act case a simple showing of some negligence on the part of the employer coupled by direct or circumstantial evidence to the injury sustained by the employee creates a jury question. Trochez v. Holland-American Cruise Lines, 353 So.2d 864 (Fla. 3d DCA 1977).
In Solano v. Carnival Cruise Lines, Inc., 491 So.2d 325, 325-26 (Fla. 3d DCA 1986), we reversed a directed verdict and held that the injured seaman had presented a prima facie case under the Jones Act and for unseaworthiness:
We agree with the appellant, plaintiff below, that the trial court erred in directing a verdict in favor of the appellees, defendants below, on the basis that in the absence of expert testimony there was no evidence to go to the jury which would establish that any acts or omissions by the appellees proximately caused the appellant's injuries.
... .
Given the "featherweight" burden of proof necessary to establish Jones Act negligence and/or the exceptionally light burden of proof necessary to establish proximate cause in unseaworthiness cases, it was error for the trial court to have directed a verdict. (Citations omitted).
In Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957), a shipowner argued that the use *235 of a knife by a ship's baker to remove frozen ice cream was not reasonably foreseeable. The Supreme Court discussed the issue of foreseeability and concluded that a directed verdict in favor of the shipowner should not have been granted:
Since the standard of liability under the Jones Act is that established by Congress under the Federal Employer's Liability Act, 45 U.S.C.A. § 51 et seq., what we said in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, [1 L.Ed.2d 493] is relevant here:
"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."
Because the jury could have so concluded, the Court of Appeals erred in holding that respondent's motion for a directed verdict should have been granted. "Courts should not assume that in determining these questions of negligence juries will fall short of a fair performance of their constitutional function." Wilkerson v. McCarthy, 336 U.S. 53, 62, 69 S.Ct. 413, 418, 93 L.Ed. 497.
352 U.S. at 523, 77 S.Ct. at 458, 1 L.Ed.2d at 514.
Here the record contains ample evidence from which a jury could have found that appellees negligently caused appellant's injuries. It does not require, as appellees suggest, a "quantum leap" to conclude that the negligence of another employee caused the butter to be on the floor. Appellant fell in a crowded area restricted to only ship's personnel and in which the waiters worked very fast, continuously moving food about and cleaning dishes. These facts, coupled with the other evidence presented by appellant, created a question of fact for the jury. Therefore we hold that the trial court erred in directing a verdict on appellant's claim for damages under the Jones Act and remand this case for a new trial.
Since this case must be remanded for a new trial on appellant's claim for damages pursuant to the Jones Act, we have also considered appellees' third point on cross-appeal. We find evidence which creates a question of fact for the jury concerning the negligence of appellant, if any. Therefore, we hold that the trial court erred when it granted a directed verdict on the affirmative defense of comparative negligence. See Rivera v. Farrell Lines, Inc., 474 F.2d 255 (2d Cir.1973).
In Point II appellant contends the trial court erroneously instructed the jury on unseaworthiness and argues that the instruction invoked concepts of negligence and the doctrine of transitory unseaworthiness.[3] In Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), the Supreme Court did away with the transitory unseaworthiness doctrine and held that no distinction existed between a permanent and a temporary unseaworthy *236 condition. In Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967), the Court again discussed the doctrines of negligence and temporary unseaworthiness:
It is here unnecessary to trace the history of the judicial development and expansion of the doctrine of unseaworthiness. That task was recently performed in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 543-549, 80 S.Ct. 926, 929-932, 4 L.Ed.2d 941, where the Court, rejecting the notion that a shipowner is liable for temporary unseaworthiness only if he is negligent, concluded: "There is no suggestion in any of the decisions that the duty is less onerous with respect to * * * an unseaworthy condition which may be only temporary. * * * What has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence." 362 U.S., at 549, 550, 80 S.Ct., at 932, 933. It is that principle which we conclude the lower courts failed to apply in their decisions in this case.
386 U.S. at 726, 87 S.Ct. at 1411, 18 L.Ed.2d at 485. See also Puerto Seguro Cia. Naviera, S.A. v. Pitsillos, 279 F.2d 599 (4th Cir.1960) (relied upon Mitchell to affirm a finding of unseaworthiness based upon the presence of cooking oil on the galley floor); Schell v. Chesapeake & Ohio Ry., 395 F.2d 676 (4th Cir.1968) (court considered the amount of time that grease was on a step irrelevant to a determination of unseaworthiness). We hold that the plain language of the instruction shows the trial court erroneously instructed the jury to consider the transitory nature of the unseaworthy condition and to apply elements of negligence where none should have been applied.[4]
Next, appellant claims the trial court erred in directing a verdict on his claim for punitive damages arising out of appellees' alleged wilful and arbitrary failure to provide maintenance and cure. Appellees, on the other hand, in their first point on cross-appeal, claim that the award for maintenance and cure should be reduced to $295.92, the amount of one month's living expenses in Portugal. Appellees base this argument on a physician's testimony that appellant could not lift weight for one additional month after leaving the S/S Royale. The question concerning appellant's claim for punitive damages and the question raised on cross-appeal concerning the compensatory damages involve essentially the same facts. It seems clear from the record, and appellees concede, that when appellant left the S/S Royale at least one doctor had stated appellant would require another month before he could do any lifting, thereby entitling him to at least one more month of maintenance and cure. However, the record also demonstrates appellees ceased paying maintenance and cure without the benefit of a medical opinion declaring that appellant had reached maximum medical improvement.[5] In Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), the Court defined maintenance and cure:
Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery.
369 U.S. at 531, 82 S.Ct. at 1000, 8 L.Ed.2d at 92.
In Vella v. Ford Motor Co., 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975), the Supreme Court held that maintenance and cure continues until such time as the incapacity is declared to be permanent.
The Shipowners' Liability Convention, made effective for the United States on October 29, 1939, Farrell v. United States, supra, [336 U.S. 511], at 517, 69 S.Ct. [707] at 710 [93 L.Ed. 850 (1949)], buttresses our conclusion that the District Court correctly held that "maintenance *237 and cure continues until such time as the incapacity is declared to be permanent." That holding tracks the wording of Art. 4, § 1, of the convention which provides: "The shipowner shall be liable to defray the expense of medical care and maintenance until the sick or injured person has been cured, or until the sickness or incapacity has been declared of a permanent character."

421 U.S. at 5, 95 S.Ct. at 1383-84, 43 L.Ed.2d at 686 (footnote omitted; emphasis added).
Appellees' refusal to furnish maintenance and cure at a time when appellant needed at least another month of convalescence and the fact that prior to trial no physician had expressed an opinion that appellant had reached maximum medical improvement constituted sufficient evidence to create a jury question as to whether appellees arbitrarily and capriciously failed to provide appellant with maintenance and cure. In Gaspard v. Taylor Diving & Salvage Co., Inc., 649 F.2d 372, 375 (5th Cir.1981), the court pointed out:
The duty to provide maintenance and cure embraces not only the obligation to provide a subsistence allowance to pay for medical expenses actually incurred by the seaman, but to take all reasonable steps to ensure that the seaman, when he is injured or becomes ill, receives proper care and treatment. See generally 2 Norris, The Law of Seamen (3rd ed. 1970 & Supp.) § 583 et seq., and cases cited therein. If an unreasonable failure to provide maintenance and cure aggravates the seaman's condition, the shipowner is liable not only for the increased medical expenses and maintenance that may become necessary, but also for the full tort damages that result.
We hold that the trial court erred when it directed a verdict on the issue of punitive damages arising out of the failure to provide maintenance and cure. Since appellant's claims for punitive damages and compensatory damages involve essentially the same facts, we reverse the jury's award of $10,000. We remand this case for a new trial on both appellant's claim for compensatory damages and punitive damages.
Finally, appellant claims the trial court erred in directing a verdict on his claim for punitive damages arising out of his alleged false imprisonment. Appellees argue on cross-appeal that the claim for false imprisonment should not have been allowed to go to the jury in the first place because an independent contractor was hired to take appellant to the airport. Appellees also claim that they had a legal duty to ensure that appellant left the United States by June 26, 1984. We find no merit in these arguments. The security company acted on Apollo's direction to escort appellant to the airport on June 25, 1984, a time when he had one day remaining on his crewman's landing permit. Assuming arguendo that appellees correctly contend they had a duty to ensure appellant's removal from the United States by June 26, 1984, they acted prematurely. Appellees cannot shield themselves from liability on an independent contractor defense where the record contains evidence in which a jury could find that they directly or indirectly procured the false imprisonment of appellant.
To be liable in an action for false imprisonment, one must have personally and actively participated therein, directly or by indirect procurement. All those who, by direct act or indirect procurement, personally participate in or proximately cause the false imprisonment and unlawful detention are liable therefor.
Johnson v. Weiner, 155 Fla. 169, 19 So.2d 699, 701 (1944). We also hold that the record contains sufficient evidence to present a jury question as to whether appellees' action amounted to an excessive and reckless disregard of appellant's rights thereby entitling appellant to punitive damages. See Harris v. Lewis State Bank, 482 So.2d 1378 (Fla. 1st DCA 1986).
Accordingly, we reverse and remand this matter for a new trial on each of the claims made by appellant against appellees.
REVERSED AND REMANDED.
NOTES
[1] Appellees filed a single answer brief in which they merged their arguments on the issues without relating the arguments to the individual liability of each appellee.
[2] The record does not reveal the trial court's reason for not mentioning Ajax in the final judgment.
[3] The court instructed the jury:

Seaworthiness is a relative concept dependent in each instance upon the circumstances in which the ship's fitness is drawn in question. In deciding this issue, you will, of course, bear in mind that the accident occurred in a kitchen where the use of butter is required for food preparation and service. In this circumstance, the mere momentary presence of butter on the kitchen floor does not in and of itself render the vessel unseaworthy.
Before you find the vessel was unseaworthy, the plaintiff must satisfy you by a fair preponderance of the evidence that the alleged condition of butter on the kitchen floor, which he claims caused him to slip, was not a momentary phase in the normal progress of work in and about the kitchen during the preparation of service of food, but that the butter was permitted to stay on the kitchen floor and accumulated in sufficient quantity that the vessel was rendered unseaworthy.
In other words, it is not required that the vessel have a crewmember handy with a rag or mop to wipe up butter the very minute it is placed on the floor. A vessel does not become unseaworthy by reason of a temporary condition caused by a transient substance, if even so, the vessel was fit for service as similar vessels in similar service.
In order to be seaworthy, a vessel need not meet a standard of perfection. It need only be reasonably safe for the purpose to which it was used. The essential test is whether considering the place and circumstances, the area was reasonably fit to permit the plaintiff to perform his tasks with reasonable safety. Absolute perfection is not required.
[4] We also note that the trial court should not have allowed this claim to go to the jury against Britannia and Apollo. It should have gone to the jury against Ajax.
[5] Appellant asks that the jury's award of $10,000 be left intact since no physician expressed the opinion that he had reached maximum medical improvement until the time of trial.